Arlie M. REED, Petitioner,

v.

ACME FOUNDRY AND MACHINE SHOP, own risk, and The Workers' Compensation Court, Respondents.

No. 52619.

Court of Appeals of Oklahoma, Division No. 2.

Feb. 5, 1980.

Rehearing Denied Feb. 27, 1980.

Certiorari Denied Sept. 5, 1980.

Released for Publication by Order of Court of Appeals Sept. 16, 1980.

Tony J. Watson, Boettcher & Leonard, Ponca City, for petitioner.

E. D. Hieronymus, Rhodes, Hieronymus, Holloway & Wilson, Tulsa, for respondents.

BRIGHTMIRE, Presiding Judge.

A newly created 1500 pound casting hung from the foundry hoist. The 60–year–old claimant, Arlie Reed, aimed an air gun at it and was beginning to blow out unwanted debris when suddenly the heavy object slipped, struck Reed's right arm and, as a wire protruding from the falling mass caught his right hand glove, yanked him down injuring his right arm, shoulder, chest and neck. Three months later, on July 21, 1976, Reed filed this claim seeking an award for permanent partial disability. On May 26, 1977 the trial judge issued an order finding claimant sustained 35 percent permanent partial disability to the body as a whole by reason of the right shoulder injury, and 45 percent permanent partial disability to his right arm resulting in an award of $50 a week for 287.5 weeks, or a total of $14,375.

The employer, Acme Foundry and Machine Shop, appealed to the court *en banc* saying the award should be vacated because (1) it was error to make an award for disability to both the body as a whole and the arm, and (2) the award is in conflict with the evidence.

Without indicating why the court *en banc* on September 12, 1977 vacated the May

order and remanded the cause "with directions to afford respondent an opportunity to submit medical evidence as to the nature and extent of claimant's permanent disability to his right shoulder."

On April 7, 1978 a different judge ordered Reed to appear before S. J. Polk, M.D., an internal medicine man, in his Oklahoma City office and submit to a medical examination. Reed appeared, Polk examined him and on May 11, 1978 drafted a report to the trial judge—a report which does not appear in the record. Thereupon the trial judge signed an order on July 24, 1978 finding that Reed sustained a compensable injury on April 26, 1976 to his "right shoulder, right chest, right arm, and neck." He found him to have "30% permanent partial disability to the body as a whole by reason of injury to the right shoulder," but "no permanent disability" with regard to his right arm, chest and neck and awarded him only a little more than half of the original award. Claimant naturally seeks appellate review and reversal of the award on the grounds (1) it ignored the earlier determination that his right arm is permanently disabled, (2) it ignored cogent and uncontradicted evidence, and (3) it was based on incompetent medical evidence.

## I

■ Claimant's first contention is that the court *en banc* remanded the case for the limited purpose of giving Acme another chance to submit medical evidence with respect to claimant's "right shoulder" disability and that the second trial judge understood this because he wrote both parties March 21, 1978 saying that he had reviewed all the medical evidence submitted by both sides, and added, "While the court considers itself bound by Judge Gudgel's determination of all issues other than the alleged *injury to the shoulder*, the court feels that it is appropriate . . . to appoint an independent physician to make an evaluation of any injury to this latter part of the body." (emphasis added) And, finally, the judge followed this up with his order directing Polk to examine and determine the medical status of Reed's right "shoulder",

acknowledging that "[t]he nature and extent of the disability to the right arm has previously been determined."

Acme ignores what the judge stated and contends that the *en banc* court in "clear and unambiguous language . . . holds that all of the Trial Court's Order of May 26, 1977 is void," and it therefore vacated all of it.

It is true that the court *en banc* "vacated" the May 26, 1977 order but when the *en banc* order is read in its entirety it is not possible to conclude the *en banc* court considered all, or any part for that matter, of the May 26th order "void." Actually the language used makes it seem probable that the *en banc* court considered the May 26 order valid and appropriate in all respects but for some undisclosed reason wanted to give Acme an opportunity to be heard further on the right shoulder disability issue.

We hold that the court *en banc* vacated the May 26, 1977 adjudication for the limited purpose of allowing Acme to adduce additional medical evidence regarding Reed's right shoulder injury and the second trial judge correctly concluded he was bound by the first trial judge's findings on all other issues. And since no new evidence was adduced justifying disturbances of the original finding of 35 percent disability to the body as a whole, the trial judge should have reinstated the original order.

## II

■ There is yet another reason why the July 24, 1978 order cannot stand—it is contrary to credible competent evidence adduced by *both* parties. Perhaps the most persuasive evidence is a report submitted by Acme written by Jack Richardson, M.D., to Acme's claims adjuster. In it Richardson, a Tulsa orthopedic specialist, said he examined Reed on November 24, 1976, and after detailing a page and a half of "normal" findings, e.g., "The patient's gait is normal. There is no limp . . . . The posture is normal . . .," he said, "This patient has had a straightforward rupture of the long head of the right biceps tendon and this remained ruptured. He still has a great deal of satisfactory use of the arm,

however, from the remaining musculature. . . . [but] the permanent partial disability *in the right arm* as a result of the injury [on April 26, 1977] is 25 percent of the arm." (emphasis added)

Acme placed the Richardson report in evidence. Supplementing it are the additional findings of claimant's physician, Robert Gibson, M.D., during an examination of Reed on March 28, 1977, and those of the court's physician, Polk. Gibson noted a "marked disuse atrophy of the lower right arm" muscles–that is, atrophy resulting from his inability to use the arm–and weakness in both his right shoulder and arm. While, as we said, a copy of Polk's report is not in the record, a copy of his deposition (taken by Acme) is and in it he told of finding, among other things, (1) a depressed area between the deltoid and biceps muscles "with knotting up of the biceps muscle below" indicating rupture of the long head of the biceps muscle; (2) a 65 degree deficit in the adduction and elevation motions of the right shoulder; (3) a 70 degree deficit in the anterior extension and elevation functions of the right arm; (4) a 15 degree reduction in the right arm's posterior extension and adduction movements at the shoulder; (5) atrophy of the right biceps muscle; (6) pronation and flexion weakness at the right elbow joint when attempted with resistance, and (7) motion of the right arm "was somewhat slower and more spastic on the right side than on the left side."

As he was requested to do, Polk estimated disability to Reed's whole body resulting from the shoulder injury. He recognized that the injury affected the use of the arm as well as of the shoulder, but as to which was affected the most the physician said, "[I]f I had to make the decision, I would have to say it's equally as important one place as the other."

In entering the first order the trial judge resolved the disability issues in a mode approved by the supreme court on several occasions through the years.[1] There was ample evidence to support his findings. Acme was afforded an opportunity to offer additional evidence pertaining to the unscheduled shoulder injury and all it came up with was more evidence that the original order was correct.

We notice that it has now been nearly four years since Reed was injured and he has not been paid yet. Such a long delay is contrary to the intent of the compensation act because it operates to work a hardship and an injustice on the injured worker. And it subjects the judicial process to reproach. Prolongation of the proceedings can be attributed to Acme's earlier appeal to the commission *en banc* which, in our opinion, was not brought on reasonable grounds.

The order of July 24, 1977 is vacated and the order of May 26, 1977 is reinstated. Acme is further ordered to pay all of the taxable costs incurred by reason of this appeal. 85 O.S. 1979 Supp. § 30.

Reversed.

BACON and NEPTUNE, JJ., concur.

---

1. *Transcon Lines v. Brotherton*, Okl., 438 P.2d 935 (1967); *Meador & Whitaker Co. v. Davis*, 177 Okl. 387, 60 P.2d 753 (1936); *Dolese Bros. Co. v. Roberts*, 155 Okl. 198, 8 P.2d 756 (1932).