[No. 49562–9.   En Banc.   January 26, 1984.]

DAVID DUNNER, ET AL, *Respondents,* v. ERNEST McLAUGHLIN, *Appellant.*

ROBERT N. WATERS, ET AL, *Respondents,* v. MICHAEL C. GILMAN, *Appellant.*

*Amy L. Crewdson* and *John H. Hertog, Jr.,* of Seattle–King County Public Defender Association (*Thomas J. Coy,*

of counsel), for appellants.

*Norm Maleng, Prosecuting Attorney,* and *Gerald A. Smith* and *Terence D. Harrington, Deputies,* for respondents.

ROSELLINI, J.—These consolidated actions involve the determination of what procedural due process guaranties apply to a 90–day involuntary commitment proceeding instituted pursuant to RCW 71.05.

We hold that (1) the standard of proof required to meet due process is by clear, cogent and convincing evidence, as formulated in WPIC 200.06, (2) a 10–member vote where the jury is 12 in number is sufficient for 90–day involuntary treatment, (3) the detainees are entitled to an instruction that the petitioner has the burden of proof, (4) the statutory right to remain silent entitles the detainee to an instruction, when requested, that the detainee is not compelled to testify and that no adverse inferences may be drawn from failure to testify, (5) the amendments to the petitions in the instant action were proper, (6) substantial compliance with Superior Court Mental Proceedings Rule 6.3(h) satisfies the petition requirements of RCW 71.05.290, and (7) the prior commitment orders were inadmissible as prejudicial in the instant action.

On February 8, 1982, a petition was filed by respondent Dr. David Dunner, M.D., of Harborview Medical Center, requesting that appellant Ernest McLaughlin be detained for 90–day involuntary commitment. Dr. Dunner neglected to check any of the designated boxes on the face of the petition alleging the various 90–day commitment grounds,[1] but did allege that McLaughlin had a mental disorder characterized by depression and suicidal ideation, continued to be suicidal, and had indicated that he would not follow through with outpatient treatment.

The petition was supported by an affidavit from Dr.

---

[1] MPR 6.3(h) sets forth the format of a petition for 90–day involuntary commitment.

Dunner that indicated in his professional opinion McLaughlin was dangerous to himself. An additional affidavit, from Nancy Afman, M.S.W., stated that appellant had a history of hospitalization. It raised questions concerning McLaughlin's residence and resources, and concluded that because of appellant's dangerousness to himself and inability to make plans to care for himself, appellant needed treatment in a structured living facility.

On February 9, 1982, appellant moved to dismiss the petition for 90–day involuntary treatment. He cited Dr. Dunner's failure to check any of the boxes to the left of the allegations on the first page of the petition and the fact that the affidavits in support of the petition were contradictory. The respondent resisted the motion to dismiss, arguing the affidavits and the petition taken as a whole allege sufficient grounds for commitment. Respondent urged that the affidavits, thus read properly, established the statutory grounds of likelihood of harm to self and grave disability.[2]

The trial court denied the motion. In doing so, the court noted that although the box alleging grave disability was not checked, the petition and affidavits did establish such an allegation. The court concluded it would consider the allegation.

McLaughlin filed a demand for jury trial, which was held February 24 through 26, 1982. At trial the respondent submitted instructions to the court on "harm to self." *See* WPIC 200.13. McLaughlin argued that his due process rights were violated by commitment pursuant to amended

[2]RCW 71.05.280 provides for 90–day commitment at the expiration of the 14–day period of treatment if: (1) such person after having been taken into custody for evaluation and treatment has threatened, attempted, or inflicted physical harm upon the person of another or himself, and as a result of mental disorder presents a likelihood of serious harm to others or himself; or (2) such person was taken into custody as a result of conduct in which he attempted or inflicted physical harm upon the person of another or himself, and continues to present, as a result of mental disorder, a likelihood of serious harm to others or himself; or (3) such person is gravely disabled.

pleadings. The trial court disagreed and allowed proof of the allegation of harm to self. The petition was formally amended at the close of the respondent's case in chief.

McLaughlin requested an instruction which informed the jury that the burden of proof was upon petitioner to prove each element of its case by the requisite standard. This request was denied.

The jury found that McLaughlin was gravely disabled and a danger to himself. Both parties stipulated that the jury voted 10 to 2 on the threshold question: "Is the respondent a mentally ill person who can be involuntarily treated for an additional period of not to exceed ninety (90) days?" On March 3, 1982, McLaughlin was committed to Western State Hospital for up to 90 days.

The second case before the court raises similar issues.

On April 6, 1982, a petition requesting that appellant Michael Gilman be detained for 90–day involuntary commitment was filed by respondents Robert N. Waters, M.D., and Frederick E. O'Brien, A.C.S.W. Mr. Gilman also filed a jury demand.

Mr. Gilman's jury trial took place April 26 through 29, 1982. The Gilman jury found by a vote of 10 to 2 that Mr. Gilman was gravely disabled and a danger to others. Mr. Gilman was committed to Western State Hospital for up to 90 days on April 29, 1982.

In the Gilman trial, respondents moved to amend the petition for 90–day involuntary treatment on the first morning of trial, prior to the seating of the jury. Respondents contended that the new allegation was precipitated by appellant's behavior while in the hospital. Appellant objected, stating that there was not any new, substantial change in appellant's behavior between respondent Waters' evaluation on April 6, 1982, and the opening day of trial April 26, 1982, which would warrant an amendment. Further, appellant argued that this additional allegation that appellant was dangerous was something which respondent Waters could have considered when he drew up the petition, since appellant's initial commitment hearing dealt

with that issue. The trial court permitted the amendment.

Gilman requested that the trial court instruct the jury that appellant was not compelled to testify in the proceeding and that no presumption of mental illness may be used, nor any inference drawn, if he failed to testify. This request was denied.

Gilman objected to the admission of three prior court orders. Two of the orders had committed Gilman for 14–day involuntary treatment. One order authorized commitment for 90–day involuntary treatment. Gilman further requested an instruction that the standard of proof at the prior 14–day commitment hearings was a preponderance of the evidence. This request was denied.

Appellants, in both McLaughlin and Gilman, proposed jury instructions which would have instructed the jury that the clear, cogent and convincing standard of proof is much closer to the beyond a reasonable doubt standard of proof than the preponderance of the evidence standard. Both trial courts rejected this instruction and instead gave the standard clear, cogent and convincing evidence instruction pursuant to WPIC 200.06.

Both appellants requested that the trial courts inform the jury that a unanimous verdict was required before appellants could be committed for involuntary treatment. These requests were denied. The juries were instructed, instead, that only 10 of their number need agree.

Both appellants made motions for reconsideration which were denied and then filed notice of appeal.

These two cases were originally taken to Division One of the Court of Appeals. On May 12, 1983, counsel for appellants moved to consolidate the cases and requested direct review by this court.

I

Initially, respondents argue, and appellants apparently concede, that this case is moot. The detentions which are the subject of this appeal have long since ended. Both McLaughlin and Gilman have subsequently been commit-

ted for additional treatment. The validity of these subsequent commitment orders is not in question.

Since the detentions which are the subject of this appeal have already ended and we cannot provide the basic relief which appellants originally sought, we find that this case is moot.

■ Although the case is moot, we may nonetheless decide it if it involves matters of continuing and substantial public interest. The criteria to be considered in determining whether a sufficient public interest is involved are: (1) the public or private nature of the question presented; (2) the desirability of an authoritative determination which will provide future guidance to public officers; and (3) the likelihood that the question will recur. *In re Cross,* 99 Wn.2d 373, 377, 662 P.2d 828 (1983); *Sorenson v. Bellingham,* 80 Wn.2d 547, 558, 496 P.2d 512 (1972). In *Cross,* we stated the need to clarify the statutory scheme governing civil commitment is a matter of continuing and substantial public interest. Here, the due process concerns raised in this case indicate the same need for clarification. We turn, therefore, to the merits of these cases.

## II

The nature of involuntary civil commitment proceedings, together with the provisions of the involuntary commitment act, RCW 71.05, supplies the framework for determining the appropriate due process guaranties applicable to 90–day involuntary commitment proceedings.

■ This court repeatedly has recognized that due process guaranties must accompany involuntary commitment for mental disorders. *In re Harris,* 98 Wn.2d 276, 654 P.2d 109 (1982); *In re Levias,* 83 Wn.2d 253, 517 P.2d 588 (1973); *In re Quesnell,* 83 Wn.2d 224, 517 P.2d 568 (1973).

The United States Supreme Court has described involuntary commitment as a significant deprivation of liberty that requires due process protection. *Addington v. Texas,* 441 U.S. 418, 425, 60 L. Ed. 2d 323, 99 S. Ct. 1804 (1979); *Humphrey v. Cady,* 405 U.S. 504, 509, 31 L. Ed. 2d 394, 92

S. Ct. 1048 (1972). Additionally, involuntary commitment may engender adverse social consequences to the individual. *Addington,* at 426; *Harris,* at 279–80.

Balanced against the individual's liberty interest is the State's legitimate interest under its parens patriae powers in providing care to its citizens who are unable, because of emotional disorders, to care for themselves. Also included in the balance is the State's need to protect the community from the dangerous tendencies of some who are mentally ill. *Addington,* at 426.

An indication of the appropriate test for reviewing questions of what is constitutional procedural due process in the involuntary commitment context is found in *In re Harris, supra.* This court, in determining what due process guaranties applied to the summons procedures for involuntary commitment, wrote that the test was a balancing one (citing *Mathews v. Eldridge,* 424 U.S. 319, 335, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976)). In *Mathews,* the United States Supreme Court wrote of the factors to be considered:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Harris,* at 285.

The governmental interests and objectives underlying the involuntary commitment act, RCW 71.05, were stated summarily by the Legislature:

> (1) To end inappropriate, indefinite commitment of mentally disordered persons and to eliminate legal disabilities that arise from such commitment;
>
> (2) To provide prompt evaluation and short term treatment of persons with serious mental disorders;
>
> (3) To safeguard individual rights;
>
> (4) To provide continuity of care for persons with serious mental disorders;

(5) To encourage the full use of all existing agencies, professional personnel, and public funds to prevent duplication of services and unnecessary expenditures;

(6) To encourage, whenever appropriate, that services be provided within the community.

RCW 71.05.010. The act further provides that persons suffering from a mental disorder may not be involuntarily committed for treatment of such disorders except pursuant to the provisions of RCW 71.05. RCW 71.05.030.

In order to safeguard individual rights, the act imposes a detailed set of procedural safeguards at each of the stages of confinement. When the treatment facility seeks a 90–day commitment, the detainee must receive a full hearing with the procedural protections of the probable cause hearing. RCW 71.05.310. At the probable cause hearing (RCW 71.05.250), the detained person is granted the following rights: (1) to present evidence on his behalf; (2) to cross–examine witnesses who testify against him; (3) to be proceeded against by the rules of evidence; (4) to remain silent; and (5) to view and copy all petitions and reports in the court file.

In addition to the protections of the probable cause hearing, the detainee must be accorded the added procedural protections of a right to jury trial and the petitioner has the burden of proof by clear, cogent, and convincing evidence. RCW 71.05.310.

The petition provisions for 90–day commitment are set forth in RCW 71.05.290:

(1) At any time during a person's fourteen day intensive treatment period, the professional person in charge of a treatment facility or his professional designee or the designated county mental health professional may petition the superior court for an order requiring such person to undergo an additional period of treatment. Such petition must be based on one or more of the grounds set forth in RCW 71.05.280.

(2) The petition shall summarize the facts which support the need for further confinement and shall be supported by affidavits signed by two examining physicians, or by one examining physician and examining mental

health professional. The affidavits shall describe in detail the behavior of the detained person which supports the petition and shall explain what, if any, less restrictive treatments which are alternatives to detention are available to such person, and shall state the willingness of the affiant to testify to such facts in subsequent judicial proceedings under this chapter.

The grounds for additional confinement set forth in RCW 71.05.280 are as follows:

At the expiration of the fourteen day period of intensive treatment, a person may be confined for further treatment pursuant to RCW 71.05.320 for an additional period, not to exceed ninety days if:

(1) Such person after having been taken into custody for evaluation and treatment has threatened, attempted, or inflicted: (a) Physical harm upon the person of another or himself, or substantial damage upon the property of another, and (b) as a result of mental disorder presents a likelihood of serious harm to others or himself; or

(2) Such person was taken into custody as a result of conduct in which he attempted or inflicted physical harm upon the person of another or himself, and continues to present, as a result of mental disorder, a likelihood of serious harm to others or himself; or

(3) Such person has been determined to be incompetent and criminal charges have been dismissed pursuant to RCW 10.77.090(3), as now or hereafter amended, and has committed acts constituting a felony, and as a result of a mental disorder, presents a substantial likelihood of repeating similar acts. In any proceeding pursuant to this subsection it shall not be necessary to show intent, wilfulness, or state of mind as an element of the felony; or

(4) Such person is gravely disabled.

For the purposes of this chapter "custody" shall mean involuntary detention under the provisions of this chapter or chapter 10.77 RCW, uninterrupted by any period of unconditional release from a facility providing involuntary care and treatment.

Additional provisions provide that a person involuntarily detained or committed under the provisions of the act is entitled to all the rights set forth in the act and retains all rights not denied him under the act (RCW 71.05.060;

71.05.360). For instance, competency shall not be determined or withdrawn by operation of the provisions of this chapter. No person will be presumed to be incompetent or will lose any civil rights as a consequence of receiving evaluation or treatment of a mental disorder. This guaranty applies whether the treatments are voluntary or involuntary, or if pursuant to certification or commitment under this chapter or any prior laws of this state dealing with mental illness. RCW 71.05.450.

## III
### STANDARD OF PROOF

The involuntary commitment act provides that the burden of proof at a 90–day civil commitment hearing is by clear, cogent and convincing evidence. RCW 71.05.310.

The detainees argue that the jury must be instructed that this standard is much closer to the beyond a reasonable doubt standard than the preponderance of evidence standard. This contention is based upon a line of decisions beginning with *In re Levias,* 83 Wn.2d 253, 517 P.2d 588 (1973), wherein this court held that the standard of proof applicable to the prior involuntary commitment statute, RCW 71.02, was the clear, cogent and convincing test which "exacts the duty that every element essential to proving committable mental illness be demonstrated to a degree essentially corresponding to that necessary for commitment in criminal proceedings." *Levias,* at 256. The court noted that this standard differs from the clear, cogent and convincing test applicable to cases where no deprivation of liberty is involved. *Levias,* at 256 n.1.

The standard of proof enunciated in *Levias* has been reemphasized with approval in *In re Patterson,* 90 Wn.2d 144, 153, 579 P.2d 1335 (1978); *Beckett v. Department of Social & Health Servs.,* 87 Wn.2d 184, 187, 550 P.2d 529 (1976); and *State v. McCarter,* 91 Wn.2d 249, 253, 588 P.2d 745 (1978).

A close examination of *Levias* suggests that this court may have felt that the appropriate standard was governed

by the United States Supreme Court decision of *In re Winship,* 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970). *Winship* held that due process requires proof beyond a reasonable doubt in juvenile proceedings.

Recently, in *Addington v. Texas,* 441 U.S. 418, 425, 60 L. Ed. 2d 323, 99 S. Ct. 1804 (1979), the United States Supreme Court distinguished the issue in *Winship* from the civil commitment problem. The Court held that a "clear and convincing" standard of proof is required by the Fourteenth Amendment in a civil proceeding brought under state law to commit an individual involuntarily for an indefinite period to a state mental hospital. It noted that *Winship* involved a juvenile proceeding, analogous to an adult criminal proceeding. The reasonable doubt standard, applicable in criminal prosecutions and delinquency proceedings, was held inappropriate in civil commitment proceedings because, given the uncertainties of psychiatric diagnosis, the reasonable doubt standard may impose a burden the State cannot meet, thus erecting an unreasonable barrier to needed medical treatment. The Court reasoned that the State should not be required to employ a standard of proof that may completely undercut its efforts to further the legitimate interests of both the State and the patient that are served by civil commitments. *Addington,* at 427–31. The Court concluded that in order to meet due process demands in involuntary commitment proceedings, the proper standard of proof must inform the fact finder that proof, greater than the preponderance of the evidence standard applicable to other categories of civil cases, is required.

■ We agree. We adopt the holding of *Addington.* The burden of proof, at a 90–day involuntary commitment proceeding, is proof by clear, cogent and convincing evidence. We conclude the trial court properly instructed the jury with that standard by giving WPIC 200.06.

Insofar as *Levias* and its progeny indicate to the contrary, they are overruled.

### JURY UNANIMITY

Appellants contend that due process guaranties mandate that there be jury unanimity in a 90–day involuntary commitment proceeding. Their argument is premised on the alleged similarities between involuntary commitment and criminal proceedings and the California Supreme Court decision of *In re Roulet,* 23 Cal. 3d 219, 590 P.2d 1, 152 Cal. Rptr. 425 (1979). In *Roulet,* a sharply divided court held that the detainee in an involuntary commitment proceeding was entitled to a unanimous jury verdict for reasons identical to those which entitled the detainee to a standard of proof beyond a reasonable doubt. The court articulated these reasons as (1) the commitment for involuntary treatment for up to a year involves a deprivation of liberty, (2) a stigma attaches to the confined person, and (3) the uncertainties that surround psychiatric diagnoses require a higher standard to avoid error. The dissent in *Roulet* distinguishes those issues concerning adjudication of criminal misconduct from those for adjudication of a mental disability. These same distinguishing aspects are also found in the United States Supreme Court decision of *Addington v. Texas, supra.*

The Washington State Constitution, article 1, section 21, permits the Legislature to provide for less than unanimous verdicts in civil matters. The Legislature has provided that in all trials by juries in superior court, except criminal trials, where the jury is 12 in number, a verdict reached by 10 shall stand as the verdict of the whole jury. RCW 4.44-.380.

While the 90–day commitment proceeding guarantees potential detainees the right to a jury trial, it is silent as to whether the jury's verdict must be unanimous. The act does, however, provide that this court shall adopt such rules as it shall deem necessary with respect to the court procedures and proceedings provided for in the act. RCW 71.05.570. We have done so. Superior Court Mental Proceedings Rule 3.4 provides that the 90–day commitment proceeding shall be proceeded with as in any other civil

action. Additionally, MPR 3.3(b) provides that if the trial is tried by a jury of six members, concurrence of five is required to reach a verdict.

█ As in our review of the standard of proof required by due process, the question of jury unanimity requires a balancing of the interests of both the State and patient that are served in civil commitments against those of the detainee in wrongful commitment. To impose the requirement of jury unanimity would create an unreasonable barrier to effectuating the purposes of the act. We find the dissent in *Roulet* and rationale of *Addington* persuasive. Additionally, in *Moss v. State,* 539 S.W.2d 936 (Tex. Civ. App. 1976), the court summarily held that the fact that a detainee under an involuntary commitment proceeding could be committed by a 5–member vote on a 6–member jury is not a deprivation of the detainee's right to due process.

We hold that due process guaranties are satisfied when a verdict is reached by 10 members of a 12–member jury or a verdict of 5 members of a 6–member jury.

### BURDEN OF PROOF

The involuntary treatment act specifies that the burden of proof at 90–day commitment proceedings is upon the petitioner. RCW 71.05.310. The court in the McLaughlin proceeding refused to give appellant's requested instruction which would have instructed the jury that the burden of proof was upon petitioner to prove each element of its case by the requisite standard. The court failed to instruct the jury that the burden of proof was upon petitioner, and that appellant McLaughlin could not be presumed to have a mental disorder merely because he was the subject of an involuntary commitment proceeding.

A similar issue was raised before this court in a criminal context in *State v. Cox,* 94 Wn.2d 170, 615 P.2d 465 (1980). Petitioner Cox claimed that the trial court's inadvertent failure to instruct that the burden of proof was upon the State was reversible error. This court disagreed. In dis-

agreeing, however, the *Cox* opinion embraced a "totality of the circumstances" test. The court concluded that if the trial court adequately instructs on the reasonable doubt standard and the presumption of innocence, then the omission of a burden of proof instruction is not reversible error per se.

The *Cox* opinion also admonished future trial courts to properly instruct on the burden of proof:

> However, as the Court of Appeals emphasized, this affirmance must not be taken as approval of the omission of a specific instruction on the allocation of burden of proof. The jury instructions must clearly explain the "necessity for the State to prove each element of the crime" [*State v. McHenry*, 88 Wn.2d 211, 214, 558 P.2d 188 (1977)] and a specific instruction on the State's burden is an important part of this explanation. The use note to the pattern jury instruction on allocation of burden of proof states that "[t]his instruction must be given in every case." WPIC 4.01, Note on Use. Although affirming the conviction in the present case, we presume that trial judges in future cases will—without fail—give a specific instruction that the State bears the burden of proof. *Cf. State v. Scott*, 93 Wn.2d 7, 13–14, 604 P.2d 943 (1980); *State v. Mello*, 79 Wn.2d 279, 281, 484 P.2d 910 (1971).

(Footnote omitted.) *Cox*, at 175–76.

■ The burden of proof instruction is one of the most important procedural safeguards the Legislature imposed in the 90–day commitment proceeding. We hold that the detainee is entitled to an instruction that the burden of proof is upon the petitioner to prove each element of its case by the requisite standard of proof. The McLaughlin court erred and is reversed.

### Right To Remain Silent

The involuntary commitment act provides that the detainee in a 90–day commitment proceeding has the right to remain silent. RCW 71.05.250, .310. The act also provides that no person shall be presumed incompetent or lose any civil rights as a consequence of receiving evaluation or treatment for mental disorder. RCW 71.05.450.

Appellant Gilman requested an instruction that appellant was not compelled to testify and that no presumption of mental illness may be used, nor any inference drawn, if he failed to testify. This request was refused.

The rationale for requiring the no–inference instruction in a criminal context is well expressed in the United States Supreme Court decision of *Carter v. Kentucky*, 450 U.S. 288, 67 L. Ed. 2d 241, 101 S. Ct. 1112 (1981). The Court in *Carter* held that when a criminal defendant requests a no–inference instruction, the trial court must instruct the jury that the defendant is not compelled to testify and that no adverse inferences may be drawn from a failure to testify. The Court recognized that the Fifth Amendment privilege against compulsory self–incrimination would lose its intended meaning if the trial court failed to minimize the danger that the jury will give evidentiary weight to a defendant's failure to testify.

■ Here, the right to remain silent is one of statutory creation. The intended effect of statutory grant cannot be accomplished without the corresponding right to the no–inference instruction. We hold that where a person is subject to a 90–day commitment proceeding and declines to testify, he is entitled to an instruction, if requested, that he is not compelled to testify and that no inference of mental illness may be drawn from the failure to testify.

On the other hand, the right to have the jury instructed in this regard is not intended to limit or have any bearing upon the waiver of the physician–patient privilege, RCW 71.05.250, or any evidence concerning the mental condition of the detained person admitted under this provision. The trial court in the Gilman case is reversed.

## AMENDMENT OF PETITIONS

In both cases, appellants contend that the respective trial courts improperly permitted amendment of the 90–day involuntary treatment petitions thereby denying appellants adequate notice and an opportunity of adequate preparation. RCW 71.05.290(2) provides:

> The petition [for 90–day involuntary treatment] shall summarize the facts which support the need for further confinement and shall be supported by affidavits signed by two examining physicians, or by one examining physician and examining mental health professional. The affidavits shall describe in detail the behavior of the detained person which supports the petition and shall explain what, if any, less restrictive treatments which are alternatives to detention are available to such person, and shall state the willingness of the affiant to testify to such facts in subsequent judicial proceedings under this chapter.

The nature and purpose of this provision was recently addressed by this court in *In re Cross*, 99 Wn.2d 373, 382, 662 P.2d 828 (1983). The court held that, although the language of RCW 71.05.290(2) is somewhat vague,

> we construe it as requiring a statement of all alternative grounds on which revocation or modification is sought. Such a construction is supported by two fundamental principles of statutory construction. The first of these is the rule that a statute must be construed so as to effectuate its underlying purpose. The central purpose of providing a person with "notice" is "to apprise the affected individual of, and permit adequate preparation for, an impending 'hearing.'" To accomplish this purpose, the notice must indicate the issues which will be addressed at the hearing.

(Citations omitted.) *Cross* dealt with the due process rights of an individual detained for revocation of an order of less restrictive treatment entered pursuant to RCW 71.05.340. The court found that the failure of petitioners to state each of the alternative grounds on which petitioners sought to detain Ms. Cross violated the statutory notice requirements because she was not given the opportunity to adequately prepare her defense. *Cross*, at 383–84. The court further rejected the contention that respondents did not anticipate the other grounds for detention:

> We cannot agree for two reasons. First, respondents could have anticipated other grounds. They knew that Ms. Cross' condition had seriously deteriorated. While they believed this was due to her failure to take her

medication, they could have realized that one other possibility was that the medication was simply not working. More importantly, the Superior Court's ruling misconstrues the purpose of notice. It is not intended solely to assure good faith on the part of the State, but, as noted above, is intended to permit the patient to adequately prepare for the hearing. This opportunity Ms. Cross did not have and hence the notice provided her was inadequate.

*Cross,* at 384.

The holding that proper notice requires "a statement of all alternative grounds on which revocation or modification is sought" is equally applicable to a petition for 90–day commitment and requires that a 90–day petition serve notice as to *all* alternative grounds on which commitment is sought. Nonetheless, this does not mean that there can never be an amendment to petitions for 90–day commitment. MPR 3.4 provides that the 90–day commitment proceeding is to be proceeded with as in any other civil action and CR 15 provides that leave of court should be freely given to amend pleadings when justice so requires.

The real issue is preparedness to meet new allegations raised by amendment. The amendment to the petitions in the instant actions is distinguishable from the amendment in *Cross*. In the Gilman proceeding, the petition was amended at the beginning of trial to include the likelihood of serious harm to others when the trial court found that new circumstances existed to warrant amendment. In McLaughlin, the petition was amended to conform to the proof of the likelihood of serious harm to self. At trial, neither Gilman nor McLaughlin claimed surprise, alleged unpreparedness to meet the new issue, or requested a continuance. The record further demonstrates that neither detainee was prejudiced in maintaining his respective defense upon the amended petitions.

We find that the detainees had adequate notice and opportunity to prepare their defenses. The detainees Gilman and McLaughlin were not denied due process by amendment of the respective petitions.

## COMPLIANCE WITH PETITION REQUIREMENTS

Appellant Gilman contends that the trial court erred in not dismissing the petition for 90–day treatment and that the court lacked jurisdiction because the petition failed to comply with RCW 71.05.290(2):

> The petition shall summarize the facts which support the need for further confinement and shall be supported by affidavits signed by two examining physicians, or by one examining physician and examining mental health professional. The affidavits shall describe in detail the behavior of the detained person which supports the petition and shall explain what, if any, less restrictive treatments which are alternatives to detention are available to such person, and shall state the willingness of the affiant to testify to such facts in subsequent judicial proceedings under this chapter.

Appellant argues that one of the affidavits submitted in support of the petition recommended less restrictive treatment and that neither affidavit stated that the affiant was willing to testify to such facts. Respondents counter that the affidavit which supported less restrictive treatment also supported the petition for more restrictive treatment and in any case any lack of support was eliminated by the submission of a second affidavit by the affiant. Respondents further argue that there was substantial compliance with RCW 71.05.290(1) and (2).

RCW 71.05.015 provides that the act is to be carefully construed. Additionally, this court indicated in *Cross* that statutes that involve a deprivation of liberty are to be strictly construed. *Cross*, at 379.

MPR 6.3(h) provides a 90–day petition form and requires that the petition shall be in substantial conformance with such form. As previously indicated, the petition provisions are intended to provide adequate notice to the detainee of the pending hearing and the issues involved. We find that the instant petition substantially complied with MPR 6.3(h) and met the requirements of RCW 71.05.290(2).

## ADMISSION OF PRIOR COMMITMENT ORDERS

Appellant Gilman argues that the admission into evidence of prior commitment orders violated the Rules of Evidence, specifically ER 403 and 404(b).[3] ER 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Appellant contends that the relevance of these exhibits of prior commitment was outweighed by their unfair prejudicial effect and that the jury may have believed that appellant was committed for 14–day treatment under the same standard of proof as required in the 90–day proceeding. We agree. Generally, an *order* of prior commitment has little, if any, relevance to a subsequent commitment proceeding. Admission of prior orders would have a tendency to create prejudice and divert the jury's deliberations from the real issues.

A stated objective of the involuntary commitment act is to provide short–term commitment and to end inappropriate, indefinite commitment. RCW 71.05.010. In this regard the provisions of the commitment act envision a systematic and continual evaluation procedure. The act imposes a detailed set of procedural safeguards at each stage of confinement. Initial detention is valid only for 72 hours, at which time the detainee must either be released or afforded a probable cause hearing. RCW 71.05.180, .200. At the conclusion of the probable cause hearing, the court may order additional commitment for 14 days of treatment if the detainee meets the substantive statutory criteria for such commitment. RCW 71.05.230, .240. At the termination of the 14–day commitment, the detainee again is entitled to be released unless 90–day commitment is sought. The

---

[3] ER 404 has no applicability to the circumstances of this involuntary commitment proceeding and need not be addressed.

detainee must receive a full hearing prior to 90–day commitment and is afforded the added procedural protections of a right to jury trial. RCW 71.05.300. Additional commitment for 180 days is allowed only if the detainee is afforded another full hearing with the right to jury trial. RCW 71.05.320. Thereafter, another full judicial hearing must be accorded each time an additional 180–day commitment is sought, and no one may be detained beyond the applicable period of commitment unless under a valid court order. RCW 71.05.320.

The only element not required to be re–proved in any subsequent hearing is that the detainee was taken into custody as a result of conduct in which he attempted or inflicted serious harm upon another. RCW 71.05.320(2). In this context the applicable prior commitment order is admissible. Otherwise, the only relevant evidence concerning prior commitment is that concerning treatment and conduct of the detainee. The potential for prejudice far outweighs the probative value of admission of commitment orders, and unless the detainee brings into issue the question of a prior commitment order, such orders are only admissible in the 180–day treatment proceeding as they relate to RCW 71.05.320(2).

The commitment orders admitted into evidence in the Gilman proceeding did not meet the aforementioned criteria for admissibility.

The Gilman trial court erred and is reversed.

## CONCLUSION

The respective 90–day commitment trials of appellants McLaughlin and Gilman are reversed.

1. The standard of proof required to meet due process is by clear, cogent and convincing evidence. The language of WPIC 200.06 sets forth the proper jury instruction.

2. Due process guaranties do not require jury unanimity. A 10–member vote where the jury is 12 in number is sufficient for 90–day involuntary treatment.

3. The detainees are entitled to an instruction that the

petitioner has the burden of proof.

4. The statutory right to remain silent entitles the detainee to an instruction, when requested, that the detainee is not compelled to testify and that no adverse inferences may be drawn from his failure to testify.

5. The amendments to the petitions in the instant action were proper.

6. Substantial compliance with MPR 6.3(h) satisfies the petition requirements of RCW 71.05.290.

WILLIAMS, C.J., UTTER, DOLLIVER, DORE, DIMMICK, and PEARSON, JJ., and CUNNINGHAM and McMULLEN, JJ. Pro Tem., concur.

Reconsideration denied March 20, 1984.