IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Detention of S.B. | ) ) ) | No. 72412-6-I |
| STATE OF WASHINGTON, | ) ) | DIVISION ONE |
| Respondent, | ) ) ) | UNPUBLISHED OPINION |
| v. | ) ) | |
| S.B., | ) ) | |
| Appellant. | ) | FILED: September 28, 2015 |

SCHINDLER, J. — S.B. appeals an order committing him to inpatient mental health treatment for a period of up to 14 days. S.B. argues he was denied due process and, in the alternative, insufficient evidence supported the conclusion that he was gravely disabled. We disagree, and affirm.

On August 11, 2014, a designated mental health professional (DMHP) filed a petition for an initial 72-hour detention of S.B. The petition alleged S.B. "presents with a mental disorder characterized by increased agitation, decreased sleep, paranoia, delusions of grandeur, decreased intake, impaired judgment [and] insight." The petition further alleged, in pertinent part:

> [S.B.] has eaten very little since Friday [and] was making statements about the food being "offerings," placing it outside for animals. He has slept very little and talks about being the "heart of the world" [and] that he has super powers. He has been agitated/yelling [and] pacing [and]

jumped 10 feet off a balcony, injuring his back [and] rolling down a hill. He has been in his father's face yelling, causing the father to fear for his safety. Today 8/10/14, he threatened to tear down his parent's [sic] barn [and] tear down their wood shed because the structures have "darkness." The parents have observed him sleeping outside last night and today, was observed ranting [and] screaming in the back yard for 4-5 hours — if the parents attempt to approach him, he becomes very agitated and angry.

Because of the mental disorder [and] above behaviors, I believe he is a danger to others, a danger to property, and has experienced a repeated [and] escalated loss of cognitive [and] volitional control.

The court authorized a 72-hour detention for evaluation and treatment at MultiCare Auburn Medical Center (MAMC).

On August 12, MAMC filed a petition seeking to involuntarily commit S.B. for a period of up to 14 days for evaluation and treatment on the ground that there was "a likelihood of serious harm to others and/or others' property." The petition alleges S.B. was expressing delusional thoughts and "believes that he is not in need of any treatment." The petition states S.B. was detained the previous week at Good Samaritan Hospital "on grounds of grave disability after he presented with poor hygiene, poor eye contact, and loud, pressured and rapid speech" but was released to his parents due to lack of bed space. The petition states S.B. was experiencing "a repeated and escalated loss of cognitive and volitional control."

On August 13, the court held a probable cause hearing on the petition to commit S.B. for up to 14 days for evaluation and treatment. Before the hearing began, the attorney representing the State informed the court that "we will be proceeding on a 14-day hearing on the allegations of grave disability, prong A, as well as harm to property." S.B.'s attorney responded, "I'm prepared to proceed to hearing."

The State presented the testimony of S.B.'s father Edward Bellack and DMHP Melissa Silvers. Bellack testified that S.B. believed the family's house was "evil" and

wanted to tear it down. Bellack testified S.B. refused to eat any food at home but ate "two or three dinners" as soon as he was admitted to MAMC. Bellack testified that S.B. would not sleep in the house and instead slept on a concrete slab in the barn. Bellack said S.B. would yell obscenities in the backyard for up to an hour at a time. When Bellack and his wife tried to talk to S.B. about his condition, S.B. became angry and fled. S.B. jumped from an eight-foot balcony, "crashed across the lawn[,] and flipped and . . . cut his back up."

DMHP Silvers is a licensed clinical social worker. Silvers testified that she evaluated S.B. following his initial detention. In conducting her evaluation, Silvers interviewed S.B. and his parents and reviewed S.B.'s medical records. Silvers testified S.B. was diagnosed with a traumatic brain injury and psychosis NOS[1] with the possibility of bipolar disorder.

According to Silvers, S.B. presented as extremely agitated, disorganized, and delusional. For example, S.B. claimed police officers broke his hands when taking him into custody but he cured his broken hands by drinking milk. S.B. also claimed a paramedic sexually assaulted him in the ambulance on the way to the hospital and stated, "I'm going to kill that guy." Silvers testified S.B. appeared to be experiencing auditory hallucinations, "yelling out at intervals at persons who are not in the room." Silvers testified S.B. denied that he needed to be hospitalized and repeatedly stated that "he can just drink milk and that will cure him of all illnesses." Silvers testified that S.B. refused psychiatric medications and showed very little insight into how to manage his mental health conditions in the community. Silvers testified that in her opinion, S.B.

---

[1] Not otherwise specified.

presented "as a substantial risk of harm to the property of others," and he was "currently gravely disabled as a result of his mental disorder" because he was "in danger of serious physical harm from the failure or inability to provide for his essential needs of health and safety."

At the conclusion of the evidence, S.B. moved to dismiss arguing the petition did not allege grave disability as a basis for the 14-day commitment. The attorney for the State informed the court that the State had notified S.B.'s attorney in advance of the hearing that the State planned to present evidence in support of the grave disability allegation. The court denied the motion to dismiss and allowed the State to amend the petition to allege grave disability based on the evidence presented at the probable cause hearing. The court ruled, in pertinent part, "The Respondent did receive notice prior to the commencement of the hearing and at the . . . commencement of the hearing that the State wished to proceed on a grave disability claim in addition to the harm to others claim."

The court found S.B. suffered from a mental disorder rendering him gravely disabled. The court found that "as a result of this mental impairment, [S.B.] is in danger of serious physical harm resulting from an inability to provide for his essential needs of health and safety." The court found that S.B. jumped over a balcony "eight feet down to the ground; falling and hurting his back," and "appeared to be unaware of the risk associated with his actions." The court found S.B. refused to sleep in his parents' home, instead sleeping on a concrete floor in a barn, and was "not eating at home with his family because he believes that there's evil in the home or in the house." The court found these behaviors demonstrated "a decreased connection to reality and [an] increased impulse control impairment such that he is putting his physical safety in

jeopardy because of the delusions and the mental illness." The court found there was insufficient evidence to establish S.B. presented a likelihood of serious harm to others' property, finding that "[a]lthough there's evidence that he has certainly suggested or indicated he wants to demolish his parents' home, there is no evidence that he's actually taken any steps to do so." The court entered an order committing S.B. for further treatment for a period of up to 14 days.

S.B. appeals the 14-day commitment order. S.B. argues the court erred in allowing the State to amend the petition to allege he is "gravely disabled" under RCW 71.05.020(17) after the close of evidence. S.B. contends his due process rights were violated because he did not receive adequate notice of the allegation that he is "gravely disabled."

Washington's civil commitment statutes authorize the State to detain an individual for evaluation and treatment after establishing by a preponderance of the evidence that the individual poses a substantial risk of harm to him or herself, others, or the property of others, or is gravely disabled. RCW 71.05.240(3); In re Det. of LaBelle, 107 Wn.2d 196, 201-02, 728 P.2d 138 (1986). RCW 71.05.020(17) provides that an individual is "gravely disabled" when, as a result of a mental disorder, the individual

> (a) [i]s in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety; or (b) manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety.

To meet its burden of establishing an individual is "gravely disabled" under RCW 71.05.020(17)(a), the State must present "recent, tangible evidence of failure or inability to provide for such essential human needs as food, clothing, shelter, and medical

treatment." LaBelle, 107 Wn.2d at 204-05. The State must also show the failure or inability to provide for essential needs presents "a high probability of serious physical harm within the near future unless adequate treatment is afforded." LaBelle, 107 Wn.2d at 204-05.

Due process requires the State to provide the respondent with sufficient notice of the facts supporting the petition for commitment. In re Det. of R.P., 89 Wn. App. 212, 216, 948 P.2d 856 (1997).

> The central purpose of providing a person with notice is to apprise the affected individual of, and permit adequate preparation for, an impending hearing. . . . To accomplish this purpose, the notice must indicate the issues which will be addressed at the hearing.

In re Cross, 99 Wn.2d 373, 382, 662 P.2d 828 (1983).[2] Mental Proceedings Rule 6.2 requires that a petition for 14-day treatment contain "[t]he facts upon which the allegations of the petition are based." MPR 6.2(c). The petition must also contain the following:

> A statement that the professional staff of the evaluation and treatment facility has examined and analyzed respondent's condition and finds that as a result of mental disorder respondent presents a likelihood of serious harm to himself or others or is gravely disabled.

MPR 6.2(e).

Here, the record establishes S.B. received adequate notice that the State sought to commit him on the basis of grave disability. The petition for an initial 72-hour detention filed on August 11 alleged facts supporting a finding of grave disability. For instance, the petition alleged S.B. was not adequately eating or sleeping and had injured himself jumping off a balcony. The petition also alleged S.B. was experiencing

---

[2] Internal quotation marks omitted.

"a repeated [and] escalated loss of cognitive [and] volitional control," symptoms that are part of the definition of "gravely disabled." RCW 71.05.020(17)(b). The petition for a 14-day detention filed on August 12 also alleged facts supporting a finding of grave disability including that S.B. lacked insight into his need for mental health treatment, was experiencing "a repeated and escalated loss of cognitive and volitional control," and had recently been hospitalized on the "grounds of grave disability."

The attorney for the State informed S.B. in advance of the probable cause hearing on the petition to commit S.B. up to 14 days for evaluation and treatment that the State sought to commit S.B. on the grounds of grave disability. At the beginning of the probable cause hearing, the attorney informed the court that the State planned to introduce evidence of grave disability. S.B.'s attorney did not object. Rather, S.B.'s attorney expressly stated, "I'm prepared to proceed to hearing."

Dunner v. McLaughlin, 100 Wn.2d 832, 676 P.2d 444 (1984), supports our conclusion. In McLaughlin, the State filed a petition for a 90-day commitment but failed to check any of the boxes in the petition alleging grounds for the commitment. McLaughlin, 100 Wn.2d at 834. However, the petition was supported by an affidavit stating McLaughlin suffered from depression and suicidal ideation, refused to follow through with outpatient treatment, and was unable to care for himself. McLaughlin, 100 Wn.2d at 834-35. The State formally amended the petition at the close of its case in chief to allege likelihood of serious harm and grave disability. McLaughlin, 100 Wn.2d at 836. The court held McLaughlin was not denied due process by the amendment because he had adequate notice and opportunity to prepare a defense. McLaughlin, 100 Wn.2d at 849.

S.B. also claims the court violated his right to due process and the appearance of fairness doctrine by allowing the State to amend the petition. " '[T]he Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases.' " Tatham v. Rogers, 170 Wn. App. 76, 90, 283 P.3d 583 (2012) (quoting Marshall v. Jerrico, Inc., 446 U.S. 238, 242, 100 S. Ct. 1610, 64 L. Ed. 2d 182 (1980)). " 'Under the appearance of fairness doctrine, a judicial proceeding is valid only if a reasonably prudent and disinterested observer would conclude that all parties obtained a fair, impartial, and neutral hearing.' " State v. Bilal, 77 Wn. App. 720, 722, 893 P.2d 674 (1995) (quoting State v. Ladenburg, 67 Wn. App. 749, 754-55, 840 P.2d 228 (1992)).

S.B. argues the court exhibited "partiality" by indicating the State could amend the petition before the State formally moved to amend. The record does not support S.B.'s argument. Before the hearing, the State clearly asserted it planned to present evidence of grave disability. Without objection, the State presented testimony establishing S.B. was gravely disabled. In denying the motion to dismiss, the court ruled, in pertinent part:

> Under the Civil Rules of Procedure, which govern these proceedings, a party has the ability to amend the pleadings to conform to the evidence that is presented at a trial. . . . I am interpreting the State's behavior and the Hospital's behavior in this case as a constructive Motion to Amend. I'm gonna grant that to allow them to proceed on grave disability.

The court did not violate due process or the appearance of fairness by allowing the State to amend the petition to conform to the evidence under CR 15(b).

In the alternative, S.B. contends insufficient evidence supports the conclusion that he was "gravely disabled." Where, as here, a court has weighed the evidence, our review is limited to determining whether substantial evidence supports the findings and,

if so, whether the findings support the conclusions of law. In re Det. of A.S., 91 Wn. App. 146, 162, 955 P.2d 836 (1998). Substantial evidence is the quantum of evidence sufficient to persuade a rational fair-minded person the premise is true. A.S., 91 Wn. App. at 162.

Substantial evidence supports the conclusion that S.B. was gravely disabled. Bellack testified that when he and his wife tried to speak to S.B. about his mental health, S.B. jumped off an eight-foot balcony, injuring his back. Bellack also testified S.B. refused to eat any food. Silvers testified S.B. refused psychiatric medications and showed no understanding of how to manage his mental health conditions in the community, claiming drinking milk would heal him. Silvers also testified S.B. was experiencing auditory hallucinations and paranoid delusions about being physically and sexually assaulted. This evidence supports the court's finding that S.B. was "in danger of serious physical harm resulting from an inability to provide for his essential needs of health and safety" and the conclusion that S.B. was "gravely disabled" under RCW 71.05.020(17).

Affirmed.

WE CONCUR:

9