# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON
2018 JUL 23 PM 12: 05

| | | |
|---|---|---|
| In the Matter of the Detention of | ) | No. 76813-1-I |
| | ) | |
| D.F., | ) | DIVISION ONE |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: July 23, 2018 |
| | ) | |

MANN, A.C.J. — D.F. appeals a trial court's order for involuntary treatment and argues that the State failed to demonstrate that he was gravely disabled. Because the State failed to prove that D.F. was unable to care for his own health and safety, or make a rational decision regarding his treatment, we reverse.

## FACTS

D.F. is a 58-year-old man who has long suffered with schizophrenia. At the time of his commitment, D.F. was unemployed and living with his parents in Anacortes. D.F. had been without mental health treatment for the past five years and was off medication.

On April 2, 2017, D.F.'s parents called the police, stating that D.F. was "extremely delusional" and "verbally aggressive." The officer that arrived at the scene reported that D.F. told him the government, specifically the DEA, had implanted a

device into his head, that he had been a part of a government experiment, that the government wanted him to kill himself, and that the government would not want him to get an evaluation, or have the courts involved. The responding officer detained D.F. and brought him to the Skagit Valley Hospital Emergency Department for an emergency evaluation.

At the request of the emergency room physician, D.F. was evaluated by the hospital's designated mental health professional (DMHP). After interviewing D.F. and his parents, the DMHP concluded that D.F. presented a likelihood of serious harm to himself and others, and was gravely disabled. The DMHP filed a Petition for Initial Detention under RCW 71.05.160. D.F. was detained for 72 hours of evaluation and treatment at the Mental Health Center of Skagit Valley Hospital under the care of treating physician Dr. Brian Waiblinger.

On April 4, Dr. Waiblinger and the DMHP petitioned the court for 14 days of involuntary treatment under RCW 71.05.240 alleging that D.F. was gravely disabled.

A probable cause hearing was held on the petition on April 7. Dr. Waiblinger testified on behalf of the State. D.F. testified on his own behalf. Dr. Waiblinger testified that D.F. was gravely disabled because his mental functioning has deteriorated to a more delusional and psychotic state. Dr. Waiblinger testified his purpose for requesting involuntarily commitment was to monitor D.F.'s reaction to his new medication and to ensure D.F. would be more stable before release. Dr. Waiblinger stated D.F. was getting better each day and had nearly returned to his "baseline."

In making the recommendation, Dr. Waiblinger substantially relied on his impression that D.F.'s parents were reluctant to allow him to return home, although D.F.

contested this claim. Dr. Waiblinger did acknowledge that D.F. had sufficient income to rent his own apartment and seemed to have no problem meeting his own "hygiene, care, [and] all of his essential human needs." Dr. Waiblinger was unwilling to speculate whether D.F. could safely live on his own.

When it was suggested that D.F. could continue his medication out of commitment, Dr. Waiblinger explained that D.F. would be released 'against medical advice' (AMA), as such he would be released without medication or a prescription. However, Dr. Waiblinger repeatedly asserted that he believed D.F. would continue to seek outpatient treatment if released, and that his prescription could be obtained from an outside psychiatrist. When asked whether D.F.'s cognitive impairment would "prevent him from receiving such care as is essential for his health and safety at this time," Dr. Weiblinger responded "No," because he believed D.F. would pursue outpatient treatment.

D.F. testified that he has psychosis, and that he plans to continue treatment, stating that he would "do far worse without it." D.F. expressed the desire to continue working with the doctor, outside of commitment.

The trial court found, by a preponderance of the evidence, that D.F. suffers from a mental disorder, schizophrenia, and that he is gravely disabled. The trial court explained its ruling by stating, "I take what the doctor said, that was not disputed or contradicted, that you manifested a severe deterioration and routine functioning evidenced by a loss of cognitive control over your actions." The court ordered 3 days of inpatient care with 90 days less restrictive alternative treatment. The trial court then

entered a standard form of its findings, conclusions, and order identifying that D.F. was gravely disabled.

D.F. appeals.

## ANALYSIS

### Background

"Involuntary commitment for mental disorders is a significant deprivation of liberty which the State cannot accomplish without due process of law." Det. of LaBelle, 107 Wn.2d 196, 201, 728 P.2d 138 (1986); Dunner v. McLaughlin, 100 Wn.2d 832, 676 P.2d 444 (1984). A court may order involuntary treatment of a mentally ill person if it finds that as a result of the mental illness the person poses a risk of harm to themselves or others. O'Connor v. Donaldson, 422 U.S. 563, 575, 95 S. Ct. 2486, 45 L. Ed. 2d 396 (1975). Consistent with this standard, RCW 71.05.240(3)(a) permits a court to order involuntary treatment if it finds "by a preponderance of the evidence that such person, as the result of mental disorder or substance use disorder, presents a likelihood of serious harm, or is gravely disabled." Born v. Thompson, 154 Wn.2d 749, 758, 117 P.3d 1098 (2005). RCW 71.05.020(22) defines "gravely disabled" as,

> a condition in which a person, as a result of a mental disorder, or as a result of the use of alcohol or other psychoactive chemicals: (a) Is in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety; or (b) manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety;

D.F. was found to be gravely disabled under RCW 71.05.020(22)(b). CP 16. Unlike RCW 71.05.020(22)(a)—which requires the person to have decompensated to the point that they are presently "in danger of serious physical harm" from their inability

to care for themselves—RCW 71.05.020(22)(b) represents a legislative attempt to permit "intervention before a mentally ill person's condition reaches crisis proportions," as it "enables the State to provide the kind of continuous care and treatment that could break the cycle and restore the individual to satisfactory functioning." LaBelle, 107 Wn.2d at 206.

In LaBelle, our Supreme Court recognized that the broad commitment standard found in RCW 71.05.020(22)(b)[1] could conflict with due process, as it presents "a danger that persons will be involuntarily committed under this standard solely because they are suffering from mental illness and may benefit from treatment." LaBelle, 107 Wn.2d at 207. The court opined, "[a]lthough it is clear that the State has a legitimate interest under its police and parens patriae powers in protecting the community from the dangerously mentally ill and in providing care to those who are unable to care for themselves, it is also clear that mental illness alone is not a constitutionally adequate basis for involuntary commitment." LaBelle, 107 Wn.2d at 201 (quoting O'Connor, 422 U.S. at 575.) As the United States Supreme Court stated in O'Connor, "'a State cannot constitutionally confine without more a nondangerous individual who is capable of surviving safely in freedom by himself or with the help of willing and responsible family members or friends.'" 422 U.S. at 576.

In consideration of this danger, the LaBelle court clarified several requirements that must be met before committing someone under RCW 71.05.020(22)(b).[2] The court

---

[1] LaBelle cites to RCW 71.05.020(1) for its definition of "gravely disabled." This subsection has since been renumbered as RCW 71.05.020(22).

[2] D.F. argues that RCW 71.05.020(22)(b) is limited to persons who have been previously committed, after a finding that they presented a risk to themselves or others, who then begin to deteriorate after they are discharged. Although the LaBelle court acknowledge such a fact pattern as

explained, when a State is proceeding under the "gravely disabled" standard, "it is particularly important that the evidence provide a factual basis for concluding that an individual 'manifests severe [mental] deterioration in routine functioning.'" LaBelle, 107 Wn.2d at 208. This evidence must include "recent proof of significant loss of cognitive or volitional control," as well as "a factual basis for concluding that the individual is not receiving or would not receive, if released, such care as is essential for his or her health or safety." LaBelle, 107 Wn.2d at 208.

Care and treatment of an individual's mental illness must be more than "preferred or beneficial or even in his best interests," such care "must be shown to be essential to an individual's health or safety and the evidence should indicate the harmful consequences likely to follow if involuntary treatment is not ordered." LaBelle, 107 Wn.2d at 208. Once the State has proved the need for treatment, the State is then required to show "the individual is unable, because of severe deterioration of mental functioning, to make a rational decision with respect to his need for treatment." LaBelle, 107 Wn.2d at 208.

### D.F.'s Involuntary Commitment

D.F. argues that the State failed to prove by a preponderance of evidence that he met the statutory definition of gravely disabled under RCW 71.05.020(22)(b). We agree.

Where the trial court has weighed the evidence, appellate review of an involuntary commitment order is limited to determining whether substantial evidence

---

being one of the policy considerations for the new standard, the court did not hold that prior commitment was a prerequisite to involuntary commitment under subsection (b), and we decline to adopt such a requirement.

supports the findings and, if so, whether the findings in turn support the trial court's conclusions of law and judgment. LaBelle, 107 Wn.2d at 209.

While it is uncontested that D.F. has a mental illness, "a finding of 'mental illness' alone cannot justify a State's locking a person up against his will." O'Connor, 422 U.S. at 575. In this case, the State was required to demonstrate that D.F. was "unable, because of severe deterioration of mental functioning, to make a rational decision with respect to his need for treatment." LaBelle, 107 Wn.2d at 208. The State failed to do so.

Dr. Weiblinger testified that he recommended continued treatment because it was in D.F.'s best interest, and that he hoped D.F. would be more stable at the time of release. But this evidence alone was insufficient to support an order of involuntary commitment. Care and treatment of an individual's mental illness must be more than "preferred or beneficial or even in his best interests." LaBelle, 107 Wn.2d at 208. Dr. Weiblinger did not testify that continued treatment was essential to D.F.'s health and safety, or that D.F. was unable to make a rational decision with respect to his need for treatment. LaBelle, 107 Wn.2d at 208. Indeed, when asked expressly whether D.F.'s impairment would "prevent him from receiving such care as is essential to his health and safety at this time" Dr. Waiblinger testified "No. I honest—I think he would go, I think he would go to treatment. I think he would go to outpatient."

Without evidence demonstrating that D.F. was unable to make a rational decision with respect to his treatment, the State failed to meet its burden of proof and the trial court's order of involuntary commitment must be reversed.[3]

We reverse.

_____
Mann, A.C.J.

WE CONCUR:

_____
Becker, J.

_____

[3] D.F. also challenges the sufficiency of the trial court's findings of fact. While the trial court used a standardized form, the form contained sufficient findings to permit meaningful review including a finding that the trial court found D.F. gravely disabled under the definition in RCW 71.05.020(22). See LaBelle, 107 Wn.2d at 219-20.