COURT OF APPEALS DIV 1
2019 FEB 19 AM 8: 54


# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Detention of | No. 77473-5-I |
| D.F., | DIVISION ONE |
| | UNPUBLISHED OPINION |
| | FILED: February 19, 2019 |

APPELWICK, C.J. — D.F. was committed involuntarily for 90 days. He argues that the trial court's instructions violated due process. The court instructed that any 10 jurors could agree on any question to answer it in the affirmative, and that it was not necessary that the jurors who agreed on one answer be the same jurors who agree on any other question. D.F. did not object below and on appeal has not raised an error that is constitutionally manifest. We affirm.

## FACTS

D.F., a man in his 60s, has been diagnosed with dementia. In 2016, D.F., who had been living alone in a senior housing apartment, was hospitalized in a psychiatric unit. While D.F. was in the hospital, his friend, Laura Fox, went to his apartment to clean it. The kitchen was dirty and showed evidence of food that had not been cooked properly, the bed appeared to have been soiled, and the toilet and bathroom sink were very dirty.

After a few weeks, D.F. left the hospital and returned home. Over the next approximately five months, Fox noticed that D.F. lost a considerable amount of weight, about 50 pounds, and appeared very thin. He slept a lot, and his incontinence worsened. After D.F. was hospitalized again, Fox convinced him to move into an assisted living facility in January 2017. D.F. dramatically improved, and returned to his senior housing apartment in March 2017.

The day after D.F. returned to his senior housing apartment, he was uncooperative with Fox. She took D.F. to the doctor and that night D.F. said that the doctor told him not to take medication, when in fact the opposite was true. Over the next couple of months, Fox observed that D.F. lost weight. At the end of July, D.F. was evicted from his apartment and taken to Harborview Medical Center, where he was initially detained.

D.F. agreed to a 14 day commitment at Harborview. Subsequently, Harborview filed a petition for a 90 day involuntary commitment, pursuant to chapter 71.05 RCW, the involuntary treatment act. D.F. exercised his right to be tried by a jury of 12.

After both parties had rested, the court instructed the jury in accordance with CR 49(I):

> In order to answer any question on the verdict form, ten jurors must agree upon the answer. It is not necessary that the jurors who agree on the answer be the same jurors who agreed on the answer to any other question, so long as ten jurors agree to each answer.

The jury was provided with a special verdict form containing five questions. Those questions asked: (1) "Does the respondent, [D.F.], have a mental disorder?"; (2)

2

"Is [D.F.] gravely disabled as a result of his mental disorder?"; (3)(a) "Has [D.F.], after having been taken into custody for evaluation and treatment, threatened, attempted or inflicted physical harm upon the person of another?"; (3)(b) "Does [D.F.], as a result of his mental disorder, present a likelihood of serious harm?"; (4) "Has the petitioner proved that the best interest of [D.F.] or others will not be served by less restrictive treatment that is an alternative to detention?"

Following deliberations, the jury returned a verdict in favor of commitment, answering each of the questions in the affirmative. The trial court polled the jury, asking each juror if the verdict form accorded with his or her individual verdict, and if it accorded with the verdict of the jury as a whole. D.F. was committed involuntarily for an additional 90 days. D.F. appeals.

## DISCUSSION

D.F. argues that CR 49(l), which allows any ten jurors to agree on each question in a civil verdict, is unconstitutional in the civil commitment context. He asserts that, in his case, due process required the same 10 jurors to find each of the elements satisfying either of the charged bases for his commitment. And, he argues that, because the trial court's instructions violated this requirement, this court should reverse the 90 day commitment order.

The rule at issue provides, "When a jury decides a verdict, any juror may vote on any of the questions posed. It is not necessary that the same ten jurors agree on every answer, as long as each answer is agreed to by any ten or more jurors." CR 49(l). Our Supreme Court has held that ten of twelve jurors must agree to commit an individual involuntarily. Dunner v. McLaughlin, 100 Wn.2d 832, 845,

676 P.2d 444 (1984). The constitutionality of a court rule is a question of law. In re Det. of D.F.F., 172 Wn.2d 37, 41, 256 P.3d 357 (2011). An appellate court reviews questions of law de novo. Id.

The State argues that the constitutional error[1] D.F. alleges is not "manifest," and therefore he is not entitled to raise it for the first time on appeal.

Under RAP 2.5(a), an "appellate court may refuse to review any claim of error which was not raised in the trial court." The same rule, however, provides an exception for claims of "manifest error affecting a constitutional right." RAP 2.5(a)(3). To meet RAP 2.5(a) and raise an error for the first time on appeal, an appellant must demonstrate (1) the error is manifest and (2) the error is truly of constitutional dimension. State v. O'Hara, 167 Wn.2d 91, 98, 217 P.3d 756 (2009). "Manifest" in RAP 2.5(a)(3) requires a showing of actual prejudice. Id. at 99. To demonstrate actual prejudice, there must be a plausible showing by the appellant that the asserted error had practical and identifiable consequences in the trial of the case. Id. If the facts necessary to adjudicate the claimed error are not in the record on appeal, no actual prejudice is shown and the error is not manifest. Id.

D.F. argues that the "error was apparent at the time it occurred." He cites State v. Lamar, 80 Wn.2d 576, 586, 327 P.3d 46 (2014). In Lamar, the trial court instructed the jurors to bring the alternate "up to speed" on the deliberations that had already occurred and go on from there. 80 Wn.2d at 582. Our Supreme Court reasoned, "This instruction affirmatively told the reconstituted jury *not to deliberate*

---

[1] The State does not argue that the alleged error does not implicate a constitutional right.

*together* as is constitutionally required." Id. It held that the instructional error affected Lamar's constitutional right to a unanimous jury verdict and was manifest error. Id. at 586.

Lamar is distinguishable. Here, the court's instructions properly adhered to CR 49(l). MPR 3.4(a), which applies to hearings for 90 and 180 day commitments, establishes that "[t]he hearing shall be proceeded with as in any other civil action." And, the trial court's instruction followed verbatim the pattern jury instructions for proceedings under chapter 71.05 RCW. See 6A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 360.20, at 377-78 (6th ed. Supp. 2017) (Concluding Instruction—Mental Illness—Involuntary Treatment).

Further, D.F. hypothesizes that the same ten jurors "did not necessarily agree on a basis" to commit him, and that "as few as eight jurors could have agreed on a basis for commitment." But, the jury polling did not reveal which jurors, if any, voted "no" on any particular questions. Therefore, based on the limited record available, it is just as likely that the same ten (or more) jurors did in fact agree on every basis for commitment than it is that as few as eight did. When an alleged error is "purely abstract and theoretical," as opposed to "evident, unmistakable or indisputable," a claim of manifest error is untenable. State v. Lynn, 67 Wn. App. 339, 346, 835 P.2d 251 (1992). The record here does not demonstrate the configuration of jury votes that D.F. opposes. No actual prejudice is shown and the error is not manifest.

5

We affirm the order of commitment.[2]

WE CONCUR:

---

[2] D.F. also argues that this court should decide this issue, even though his 90 day order of commitment has expired. The State did not dispute this argument, and we do not address it, as we affirm the order on other grounds.