[No. 42670.    En Banc.    December 28, 1973.]

*In the Matter of* MARILYN LEVIAS.

*Christopher T. Bayley, Prosecuting Attorney,* and *John F. Aslin, Deputy,* for appellant.

*Terrence A. Carroll, Peter Berzins,* and *Robert Czeisler,* for respondent.

FINLEY, J.—This is an appeal by the State of Washington from an order of the King County Superior Court dismissing a petition for the commitment of Marilyn Levias as a mentally ill person.

The facts of this case are as follows: On November 15, 1972, a formal application for the involuntary hospitalization of the respondent/cross-appellant, Marilyn Levias, was

filed by her father, Milton Kidd. That same day, following an initial investigation and endorsement by the Mental Illness Division of the King County Superior Court, Ms. Levias was apprehended and served notice that a hearing on the application for commitment would be held the following day. Anticipating appointment as guardian ad litem, an attorney from the Office of the Public Defender consulted with Ms. Levias on the evening of November 15, 1972. The following day, a hearing was held during which Ms. Levias was examined by two psychiatrists who diagnosed her mental condition as chronic schizophrenia, paranoid type. A demand for trial by jury was then made by Ms. Levias through her guardian ad litem. On November 17, 1972, the court appointed two additional psychiatrists for purposes of conducting a further examination of Ms. Levias, and ordered that the respondent be detained at Harborview Medical Center pending her trial. A written evaluation was filed with the court by the latter two psychiatrists on November 27, 1972, reporting a diagnosis similar to that of the two previous psychiatrists. On December 11 and 12, 1972, the court considered pretrial motions relating primarily to (1) the standard of proof to be met by the state in establishing mental illness, and (2) whether "dangerousness" need be proven for commitment of a psychotic person. In response, the court ruled first, that the standard of proof to be met by the state is that of "clear, cogent, and convincing evidence," and second, that "dangerousness" must be established for purposes of commitment even where psychosis is sufficiently demonstrated. Both appellant and respondent took exception to the first ruling; the state took exception to the latter. The matter was then tried before a jury on December 15, 18 and 19, 1972. On December 19, 1972, the jury returned a verdict finding that Ms. Levias was mentally ill, but that she was not dangerous to her own life or to the lives or property of others. On December 22, 1972, the court filed an order of dismissal.

On appeal, the State of Washington, as appellant, contends that the standard of proof required by the court—

that of clear, cogent, and convincing evidence—was improper, arguing for the preponderance of the evidence standard. Both standards are, of course, generally associated with civil trials. The respondent, Marilyn Levias, charges that the state must prove committable mental illness by the criminal law standard of proof, *i.e.,* beyond a reasonable doubt.

■ It is true, as the state contends, that an adjudication of mental illness made pursuant to chapter 71.02 RCW is a civil proceeding. *State ex rel. Richey v. Superior Court,* 59 Wn.2d 872, 371 P.2d 51 (1962). Traditionally, unless otherwise provided by statute or case law, the standard of proof used in the trial of civil matters has been a preponderance of the evidence. However, in a somewhat related or companion case heard the same day as the instant case, we specifically adopted the position of the United States Supreme Court in *In re Gault,* 387 U.S. 1, 50, 18 L. Ed. 2d 527, 87 S. Ct. 1428 (1967), rejecting the " 'civil' label-of-convenience" which theretofore had attached in both juvenile and mental illness proceedings, and which, on occasion, had obfuscated and resulted in less than appropriate emphasis on due process protection for citizens whose liberty was at stake. *In re Quesnell,* 83 Wn.2d 224, 229, 517 P.2d 568 (1973); *see Heryford v. Parker,* 396 F.2d 393, 396 (10th Cir. 1968). In observing the striking similarities in commitment proceedings for both juveniles and persons alleged to be mentally ill, we are cognizant of the decision of the United States Supreme Court in *In re Winship,* 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970). There, the court again discounted and disregarded "civil labels," and held that due process requires proof beyond a reasonable doubt in juvenile proceedings, since the child may be " 'subjected to the loss of his liberty for years.' " *In re Winship, supra* at 365, 366. As we stated in *Quesnell,* this likelihood of a substantial deprivation of liberty is equally apparent in commitment proceedings brought under chapter 71.02 RCW.

It is therefore the duty of the judiciary in mental illness proceedings, pursuant to the compelling mandates of due process of law, to require a very high standard of proof in these "civil" actions. *See Lessard v. Schmidt,* 349 F. Supp. 1078 (E.D. Wis. 1972). In this regard, the ruling of the trial court below is consistent with the Supreme Court holding in *Winship* in demanding that the state establish its case under a standard of proof which constitutes the civil counterpart of the criminal reasonable doubt standard, to wit: clear, cogent, and convincing evidence. Carrying a much greater and much stricter burden of proof than a mere preponderance of the evidence (*Cheesman v. Sathre,* 45 Wn.2d 193, 197, 273 P.2d 500 (1954)), the clear, cogent, and convincing test applicable in mental illness proceedings exacts the duty that every element essential to proving committable mental illness be demonstrated to a degree essentially corresponding to that necessary for commitment in criminal proceedings.[1] Any lesser standard of proof permits a deprivation of personal liberty through improper suspension of the strict requirements of due process.[2] *In re Winship, supra.*

■ We are also faced with a contention by the state

[1] Our conclusion in *Bland v. Mentor,* 63 Wn.2d 150, 385 P.2d 727 (1963), is not inconsistent with our holding in this case since *Bland* was concerned only with a conveyance of real property and the creation of a constructive trust; no deprivation of liberty was even remotely involved. Where the "disutility" of an erroneous verdict includes not merely the financial loss which typifies the civil proceeding, but incorporates social stigma and loss of reputation as well, the clear, cogent, and convincing test is applied as requiring proof to a higher probability than a mere preponderance of the evidence. Where the "disutility" of an erroneous verdict escalates to the serious degree of including the wrongful commitment of one who should not have been deprived of personal liberty, the test for proof is, of necessity, far more stringent. Kaplan, *Decision Theory and the Factfinding Process,* 20 Stan. L. Rev. 1065, 1072-73 (1968).

[2] That this strict standard of proof expresses legislative intent is evidenced by the recent amendatory enactment of the legislature, a pertinent portion of which states: "The burden of proof [at the mental illness hearing] shall be by clear, cogent, and convincing evidence and shall be upon the petitioning facility." Chapter 142, Laws of 1973, 1st Ex. Sess., § 36, p. 1031.

that "dangerousness" need not be established where an alleged mentally ill person is diagnosed as psychotic. The state founds its argument upon the following language of RCW 71.02.010:

"Mentally ill person" shall mean any person found to be suffering from psychosis or other disease impairing his mental health, and the symptoms of such disease are of a suicidal, homicidal, or incendiary nature, or of such nature which would render such person dangerous to his own life or to the lives or property of others.

The trial court below ruled that the latter phrase pertaining to dangerous symptoms referred to and qualified the phrase "psychosis or other disease impairing his mental health," and did not single out a separate standard for psychosis. As in *In re Quesnell, supra,* the state argues that its interest in providing "care and treatment" is sufficiently great to extend its commitment powers beyond those who pose a threat to themselves or other members of the public, to permit involuntary incarceration of those persons who may be mentally ill but who are capable of a satisfactory and self-sufficient existence without imposed institutionalization and beneficent "treatment." However, the doctrine of parens patriae rigorously discredited by the United States Supreme Court in *In re Gault, supra,* can no longer provide an adequate basis for the incarceration of individuals who have committed no crime, who are able to function reasonably well in society, and *who pose no threat to themselves or others,* despite some degree of mental illness. Since the police power of the state is focused upon securing the safety of its citizenry, neither logic nor law permits any supportive basis for the involuntary incarceration of persons *who are not unsafe.* Weighed against the fundamental liberties at stake in commitment proceedings, the interest of the state in the commitment of nondangerous persons is less than compelling.[3] *See Lessard v. Schmidt, supra* at

---

[3]"The only freedom which deserves the name, is that of pursuing our own good in our own way, so long as we do not attempt to deprive others of theirs or impede their efforts to obtain it. Each is the proper

1084. We therefore hold, consistent with the ruling of the trial court, that the language of RCW 71.02.010 pertaining to symptoms of such nature as would render a person "dangerous" refers to *all* forms of committable mental illness, including psychosis.

■ Finally, with regard to the collateral issue concerning detention pending trial, the record indicates that the respondent/cross-appellant went to trial only 4 days after she raised this issue, and therefore is not truly aggrieved by that portion of RCW 71.02.130 which permits detention beyond 60 days where a jury trial has been demanded. That prolonged detention without a hearing permits a deprivation of liberty without due process of law is apparent. *Morrissey v. Brewer*, 408 U.S. 471, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972). However, without passing premature judgment upon an enactment which has not yet taken effect,[4] it would seem at this point that the legislature has taken significant and appropriate action to rectify any injustice which might otherwise result from the practical application of RCW 71.02.130 by permitting prehearing detention in mental illness proceedings *for only 72 hours*. Chapter 142, Laws of 1973, 1st Ex. Sess., §§ 20-25, pp. 1023-27.

For the reasons indicated, the pertinent rulings of the trial court in support of its order of dismissal upon jury verdict are affirmed.

ROSELLINI, HUNTER, HAMILTON, WRIGHT, UTTER, and BRACHTENBACH, JJ., and RUMMEL, J. Pro Tem., concur.

HALE, C.J., concurs in the result.

---

guardian of his own health, whether bodily, or mental and spiritual. Mankind are greater gainers by suffering each other to live as seems good to themselves, than by compelling each to live as seems good to the rest."
J. Mill, *On Liberty* 18 (1962).

[4]The 1973 amendatory act takes effect on January 1, 1974. Chapter 142, Laws of 1973, 1st Ex. Sess., § 67, p. 1043.