

**FILE**
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE MAY 3 0 2019
~~Fairhurst,~~ CJ.
CHIEF JUSTICE

This opinion was
filed for record
at 8:00 on 5-30-19

Susan L. Carlson
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 96434-3 |
| Respondent, | ) | |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| T.J.S.-M., | ) | |
| | ) | |
| Petitioner. | ) | Filed __MAY 3 0 2019__ |
| | ) | |

MADSEN, J.—In this case, T.J.S.-M., a juvenile, challenges his suspended

manifest injustice disposition. The Court of Appeals dismissed his claim on ripeness

grounds. T.J.S.-M. contends his appeal is ripe for review. T.J.S.-M. also argues the trial

court applied the wrong standard of proof during the sentencing hearing and, accordingly,

improperly imposed a manifest injustice disposition.

For the following reasons, we reverse the Court of Appeals' decision but affirm

T.J.S.-M.'s conviction and sentence.

## FACTS

In February 2016, T.J.S.-M., on three separate occasions, embraced, groped, and kissed three different high school classmates. In each of these instances, the victims indicated they were not comfortable with T.J.S.-M.'s conduct and attempted to leave. T.J.S.-M. detained each girl against her will before eventually releasing her.

After the incidents were reported and investigated, the State charged T.J.S.-M. with two counts of indecent liberties, two counts of unlawful imprisonment with sexual motivation, and one count of fourth degree assault with sexual motivation. The case proceeded to bench trial, where T.J.S.-M. was convicted of the two counts of unlawful imprisonment with sexual motivation and one count of fourth degree assault without sexual motivation.

Since T.J.S.-M. had no prior criminal history, he requested the standard range of 0-30 days' confinement and 12 months' probation with conditions, including sex offender counseling, with credit for 83 days served. The State recommended a manifest injustice disposition of 36 weeks' confinement to be suspended by a special sex offender disposition alternative (SSODA).

The trial court adopted the State's recommendation. Applying a "clear and convincing" standard, which it understood to be "just below beyond a reasonable doubt," 2 Verbatim Report of Proceedings (Jan. 25, 2017) (VRP) at 353, the court found that T.J.S.-M. had threatened serious bodily harm and sexual motivation was an aggravating factor. It also found T.J.S.-M. had a high risk to reoffend due to the sexual nature of the offense, posed a threat to community safety, and had intellectual limitations that could

2

also show a high risk to reoffend. As mitigating factors, the court noted that T.J.S.-M. had no prior criminal record and had some mental health issues.

T.J.S.-M. appealed the manifest injustice disposition. The Court of Appeals dismissed the appeal on ripeness grounds, holding that a manifest injustice disposition suspended by a SSODA is not reviewable until the SSODA has been revoked and the disposition imposed. *See State v. T.J.S.-M.*, No. 35130-1-III (Wash. Ct. App. Sept. 20, 2018) (unpublished), https://www.courts.wa.gov/opinions/pdf/351301_unp.pdf. Between the filing of T.J.S.-M.'s notice of appeal and the Court of Appeals' ruling, T.J.S.-M. violated his SSODA conditions. His SSODA was revoked and his suspended disposition was revoked; he was committed to confinement. Decl. of Samuel J. Comi, Attach. F. T.J.S.-M. sought review in this court.

## ANALYSIS

### Mootness

As a preliminary matter, both parties agree that this case is moot since T.J.S.-M. already served his sentence and we cannot provide relief for him on appeal. Generally, we do not consider questions that are moot. *State v. Hunley*, 175 Wn.2d 901, 907, 287 P.3d 584 (2012) (citing *State v. Gentry*, 125 Wn.2d 570, 616, 888 P.2d 1105 (1995)). A case is moot if we can no longer provide effective relief on appeal. *Id.* The expiration of a sentencing term technically renders a case moot. *Id.* (citing *In re Pers. Restraint of Mattson*, 166 Wn.2d 730, 736, 214 P.3d 141 (2009)). Nevertheless, we may retain and decide a case if it involves matters of continuing and substantial interest. *Id.* We consider three factors when determining whether the issue presents a continuing and substantial

public interest: "'[(1)] the public or private nature of the question presented, [(2)] the desirability of an authoritative determination for the future guidance of public officers, and [(3)] the likelihood of future recurrence of the question.'" *Id.* (alterations in original) (internal quotation marks omitted) (quoting *Mattson*, 166 Wn.2d at 736).

Here, the timing of appealing a suspended manifest injustice disposition is a matter of public interest. It is not unique to T.J.S.-M., and whether a suspended disposition may be challenged is irrefutably of substantial public interest. Next, the lower court relied on a prior Court of Appeals case to dismiss T.J.S.-M.'s appeal on ripeness grounds. We have not had the opportunity to decide this issue.[1] Since we have not ruled on this issue, there is a need for future guidance, meeting the second factor. Finally, this issue is likely to recur because manifest injustice dispositions are prevalent in juvenile proceedings and enhanced sentences are often challenged. Based on these considerations, we proceed to the merits of the case.

Reviewability of Suspended Manifest Injustice Dispositions

The first issue is whether a suspended manifest injustice disposition is reviewable prior to revocation of a SSODA. The Court of Appeals dismissed T.J.S.-M.'s appeal based on RCW 13.40.162 and *State v. J.B.*, 102 Wn. App. 583, 9 P.3d 890 (2000). *J.B.* involved a challenge to a suspended manifest injustice disposition. Relying on *State v. Langland*, 42 Wn. App. 287, 711 P.2d 1039 (1985) (suspended life sentence as cruel and unusual punishment is not ripe for review until the sentence is actually imposed), the

---

[1] It appears that the parties in the case that the Court of Appeals relied on, *State v. J.B.*, 102 Wn. App. 583, 9 P.3d 890 (2000), did not seek review of that case in this court.

4

court in *J.B.* held that a suspended manifest injustice disposition is not ripe for review because "the consequences of such rulings are merely potential, not actual." *J.B.*, 102 Wn. App. at 585. The court stated that "the proper time to appeal a suspended manifest injustice disposition is after that disposition is imposed following SSODA revocation." *Id.* at 584.

Relying on *J.B.*, the State contends that the appeal should have been brought after T.J.S.-M.'s "SSODA was revoked and the [suspended] JRA [(Juvenile Rehabilitation Administration) sentence] imposed." Suppl. Br. of Resp't at 7. The State urges that since T.J.S.-M. failed to wait until his suspended sentence was imposed, his sentence is not ripe for review.

Statutes Governing Manifest Injustice and SSODA Dispositions

We first note that a manifest injustice disposition and a SSODA disposition are governed by different statutes. Imposition of a manifest injustice sentence is governed by RCW 13.40.160(2). Under that section, the court must enter its reasons for imposing a manifest injustice sentence as indicated in option D of RCW 13.40.0357, and the sentence imposed under option D "shall be comprised of confinement or community supervision, or a combination thereof." RCW 13.40.160(2). "Community supervision" is defined in part as "an individualized program comprised of . . . [r]esidential treatment, where substance abuse, mental health, and/or co-occurring disorders have been identified in an assessment by a qualified mental health professional." RCW 13.40.020(5)(e). If the court "imposes a sentence of confinement exceeding thirty days, the court shall sentence the juvenile to a maximum term." RCW 13.40.160(2). A court may suspend the execution of

5

the manifest injustice disposition if imposed in conjunction with a SSODA disposition. RCW 13.40.160(10).

"A disposition outside the standard range is appealable under RCW 13.40.230 by the state or the respondent." RCW 13.40.160(2). If appealed, a manifest injustice disposition must be supported by the record, those reasons must clearly and convincingly support a disposition outside the standard range, and the sentence imposed must not be clearly too excessive or too lenient. RCW 13.40.230(2). RCW 13.40.230(1) provides that appeal of a manifest injustice sentence "shall be heard solely upon the record that was before the disposition court. No written briefs may be required, and the appeal shall be heard within thirty days following the date of sentencing and a decision rendered within fifteen days following the argument."

SSODA dispositions are governed by RCW 13.40.162(3). That statute provides that when a juvenile offender is eligible for a SSODA, a court may order an examination to determine eligibility for treatment. RCW 13.40.162(2). If the court determines treatment is necessary after reviewing the examination report, it shall impose either a standard range disposition or a manifest injustice disposition, if appropriate. RCW 13.40.162(3). The court may also "suspend the execution of the disposition and place the offender on community supervision for at least two years." *Id.* SSODA dispositions are not appealable under RCW 13.40.230. RCW 13.40.162(10).

The court in *J.B.* and the Court of Appeals here implicitly recognize that T.J.S.-M.'s suspended manifest injustice disposition is appealable. The disagreement is

when a challenge to the manifest injustice disposition is ripe when it is imposed in conjunction with a SSODA disposition. The statutes answer this question.

RCW 13.40.230 does not distinguish between the appeal of a manifest injustice sentence that is suspended and one that is not. Instead, RCW 13.40.230 lays out an accelerated appellate procedure that suggests that juvenile defendants should be able to immediately challenge their manifest injustice dispositions due to the truncated timetable juvenile sentences normally face. *See* RCW 13.40.230(1) ("the appeal shall be heard within thirty days *following the date of sentencing* and a decision rendered within fifteen days following the argument" (emphasis added)). RCW 13.40.160(2) describes a manifest injustice sentence as "a disposition outside the standard range," and "[a] disposition outside the standard range is appealable." Nothing in RCW 13.40.160 suggests a manifest injustice disposition may be appealed only when a suspension is revoked. Indeed, a "disposition outside the standard range *is appealable* under RCW 13.40.230 by the state or the respondent." *Id.* (emphasis added). There is no limiting language here.

Reading these statutes together, it is clear that a SSODA sentence is not appealable under RCW 13.40.162(10). It is equally clear that a manifest injustice disposition is appealable under RCW 13.40.230 regardless of whether the execution of the disposition is suspended. *See* RCW 13.40.160(10).

As mentioned, the Court of Appeals here relied on *J.B.*, which cited RCW 13.40.162 as support for holding that appeal of a manifest injustice disposition was not ripe until it is *imposed*. But, there is a difference between the *imposition* and the

7

*execution* of a disposition. *J.B.* conflates these two distinct terms. A trial court "*may suspend the execution of the disposition*" when imposing a SSODA sentence. RCW 13.40.162(3) (emphasis added). However, the manifest injustice disposition is actually imposed at sentencing. *Id.* To the extent that *J.B.* suggests a manifest injustice disposition may be appealed only after the revocation of a SSODA, we disapprove it.

Standard of Proof in Juvenile Sentencing Hearings

When imposing T.J.S.-M.'s manifest injustice disposition, the trial court determined the standard range was insufficient by clear and convincing evidence. The trial court noted that it believed the clear and convincing evidence standard to be "just below beyond a reasonable doubt." 2 VRP at 353. T.J.S.-M. argues this was an improper standard to apply.

T.J.S.-M. asserts that the clear and convincing standard is the civil counterpart to beyond a reasonable doubt in the juvenile context, relying on *In re Levias*, 83 Wn.2d 253, 517 P.2d 588 (1973). Suppl. Br. of Appellant/Pet'r at 6. He argues that the court must find beyond a reasonable doubt that he presents a clear danger to society for a manifest injustice disposition to be upheld. *Id.* (citing *State v. Rhodes*, 92 Wn.2d 755, 600 P.2d 1264 (1979)). He also cites to a long line of cases that also hold similar propositions.[2]

The State argues the line of cases that T.J.S-M. relies on are no longer sound precedent. *See* Suppl. Br. of Resp't at 9-10. We agree.

---

[2] *See id.* at 7-8.

The proposition that T.J.S.-M. argues for—that the clear and convincing standard is equivalent to beyond a reasonable doubt—has its genesis in *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). The issue in *Winship* was whether juveniles are constitutionally entitled to proof beyond a reasonable doubt when they are charged with criminal violations. *Id.* at 365. The defendant was sentenced in New York Family Court to 18 months in training school, subject to annual extensions of commitment until his 18th birthday. *Id.* at 360. The trial judge had relied on a state statute that provided "'[a]ny determination at the conclusion of [an adjudicatory] hearing that a [juvenile] did an act or acts must be based on a preponderance of the evidence.'" *Id.* The Supreme Court held that the preponderance standard was insufficient to convict a juvenile of a crime. It reasoned that "'[g]uilt in a criminal case must be proved beyond a reasonable doubt'" as those rules were "'developed to safeguard men from dubious and unjust convictions, with resulting forfeitures of life, liberty and property.'" *Id.* at 362 (alteration in original) (quoting *Brinegar v. United States*, 338 U.S. 160, 174, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949)). Due process "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Id.* at 364. Even though juvenile proceedings generally were civil in nature and part of the purpose of those proceedings were for rehabilitative purposes, "civil labels and good intentions do not themselves obviate the need for criminal due process safeguards in juvenile courts, for '[a] proceeding where the issue is whether the child will be found to be delinquent and subjected to the loss of his liberty for years is comparable in seriousness to a felony prosecution.'" *Id.* at 365-66 (internal

9

quotation marks omitted) (quoting *In re Gault*, 387 U.S. 1, 36, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967)).

We followed the *Winship* Court's rationale in *Levias* in the context of indefinite civil commitment proceedings. The issue there was whether the State needed to prove dangerousness for indefinite civil commitment by a preponderance of the evidence or beyond a reasonable doubt. *Levias*, 83 Wn.2d at 254-55. The trial court had instructed the jury that the standard was clear, cogent, and convincing evidence. *Id.* at 254. Relying on *Winship*, we noted that "due process requires proof beyond a reasonable doubt in juvenile proceedings, since the child may be 'subjected to the loss of his liberty for years.'" *Id.* at 255 (quoting *Winship*, 397 U.S. at 366). We thus held that the clear, cogent, and convincing evidence "constitutes the civil counterpart of the criminal reasonable doubt standard." *Id.* at 256. As a result, that standard "exacts the duty that every element essential to proving committable mental illness be demonstrated to a degree essentially corresponding to that necessary for commitment in criminal proceedings." *Id.*

We reaffirmed the equivalency of the two standards in *Rhodes*. 92 Wn.2d 755. There, we reviewed whether the imposition of a manifest injustice disposition in a juvenile sentence is supported by clear and convincing evidence in the trial court's findings. To begin, we held that "[t]he promulgation of standard disposition ranges for juvenile offenders creates a constitutionally protected . . . interest." *Id.* at 758. We then reiterated that "[t]he 'clear and convincing' standard is the civil counterpart to 'beyond a reasonable doubt'" and the "phrase 'manifest injustice' represents a demanding standard."

*Id.* at 760. "[T]o stand on review, the standard range for this offense and this defendant must present, beyond a reasonable doubt, a clear danger to society." *Id.*

That same year, the Supreme Court addressed the appropriate standard of proof in civil commitment proceedings in *Addington v. Texas*, 441 U.S. 418, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979). Texas determined that preponderance of the evidence was the appropriate standard for civil commitment proceedings. *Id.* at 422. The Court disagreed, stating that "there is [a] possible risk that a factfinder might decide to commit an individual based solely on a few isolated instances of unusual conduct." *Id.* at 427. "[D]ue process requires the state to justify confinement by proof more substantial than a mere preponderance of the evidence." *Id.* However, it also found the reasonable doubt standard to be equally inappropriate because unlike criminal cases, "[t]he subtleties and nuances of psychiatric diagnosis render certainties virtually beyond reach in most situations." *Id.* at 430. Having such a high standard of proof would "undercut [the state's] efforts to further the legitimate interests of both the state and the patient that are served by civil commitments." *Id.* Thus, the court concluded the appropriate standard in civil commitment proceedings is clear and convincing evidence.

After that decision, we revisited *Levias* in *Dunner v. McLaughlin*, 100 Wn.2d 832, 676 P.2d 444 (1984). Relying on the Court's holding in *Addington*, we held that clear and convincing evidence is the standard of proof in civil commitment proceedings. *Id.* at 843. We noted that in *Levias* we may have felt bound by the holding in *Winship* to determine that proof beyond a reasonable doubt was necessary in civil commitment proceedings. *Id.*

at 842-43. We then overruled *Levias*, holding that clear, cogent, and convincing evidence is the proper standard of proof, as a standard distinct from beyond a reasonable doubt.

Finally, in *State v. Baldwin*, 150 Wn.2d 448, 78 P.3d 1005 (2003), we overruled *Rhodes*'s holding that dispositional standards create a constitutionally protected liberty interest because, in part, "[t]he guidelines are intended only to structure discretionary decisions affecting sentences; they do not specify that a particular sentence must be imposed. Since nothing in these guideline statutes requires a certain outcome, the statutes create no constitutionally protectable liberty interest." *Id.* at 461. Since the rationale for equating the clear and convincing standard with proof beyond a reasonable doubt was based on the liberty interest at stake, we recognized that our holding in *Rhodes* could not stand.

Because our case law holds that no constitutionally protectable liberty interest is created by the juvenile dispositional guidelines, due process is not offended by applying clear and convincing evidence in this context, which is not the equivalent to the beyond a reasonable doubt standard.[3]

Manifest Injustice Disposition Was Supported by Clear and Convincing Evidence

Finally, T.J.S.-M. contends the imposition of his manifest injustice disposition was not supported by the evidence. He argues that the trial court's findings that his conduct toward victims threatened serious bodily injury and that he was a high risk to reoffend

---

[3] At oral argument, T.J.S.-M. raised issues regarding *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Because T.J.S.-M. did not present sufficient argument, we decline to address whether these cases apply to juvenile sentencing.

were aggravating factors for purposes of his manifest injustice disposition do not meet the requisite standard of proof.

We first note that T.J.S.-M.'s argument regarding the imposition of the manifest injustice disposition is premised on his view that "clear and convincing" evidence equates to "beyond a reasonable doubt." T.J.S.-M. does not argue how he prevails if we determine that clear and convincing evidence is an intermediary standard below beyond a reasonable doubt, and he appears to concede this point.[4]

## CONCLUSION

Manifest injustice dispositions suspended by a SSODA are reviewable when imposed—juveniles need not wait for the disposition to be executed before challenging it. We reverse the Court of Appeals' ruling to the contrary. Further, we hold that the clear and convincing standard as an intermediary standard is sufficient to support a manifest injustice disposition and affirm the trial court's ruling.

---

[4] During oral arguments, T.J.S.-M. was asked whether he would prevail under an intermediary clear and convincing standard. While he did not expressly concede this point, he acknowledged, "It's more difficult." Wash. Supreme Court oral argument, *State v. T.J.S.-M.*, No. 96434-3 (Mar. 14, 2019), at 15 min., 36 sec. through 16 min., 10 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://www.tvw.org/watch/?eventID=2019031096.

Madsen, J.

WE CONCUR:

Fairhurst, C.J.

Wiggins J.

No. 96434-3

YU, J. (concurring) — I agree with the majority that we should address the

merits of this moot case, that a suspended manifest injustice disposition is ripe for

review at the time it is imposed, that the required evidentiary standard is clear and

convincing evidence, and that the evidence clearly and convincingly supported a

manifest injustice disposition in this case. However, I cannot agree with the

majority's broad and unnecessary assertion that a juvenile facing a manifest

injustice disposition has "no constitutionally protectable liberty interest" at stake.

Majority at 12. I therefore respectfully concur.

Determining the required evidentiary standard for imposing a manifest

injustice disposition should be a simple task. By statute, a "court's finding of

manifest injustice shall be supported by clear and convincing evidence." RCW

13.40.160(2). Likewise, appellate courts must determine on review whether a trial

court's "reasons clearly and convincingly support the conclusion that a disposition

within the [standard] range would constitute a manifest injustice." RCW

13.40.230(2)(a). "Clear and convincing evidence" "is a quantum of proof that is more than a preponderance of the evidence, but less than what is needed to establish proof beyond a reasonable doubt." *In re Estate of Barnes*, 185 Wn.2d 1, 10 n.5, 367 P.3d 580 (2016) (quoting *Bland v. Mentor*, 63 Wn.2d 150, 154, 385 P.2d 727 (1963)). The statutory language thus could not be clearer: a manifest injustice disposition must be supported by clear and convincing evidence, not by proof beyond a reasonable doubt.

Nevertheless, *State v. Rhodes* held that "in order to stand on review, the standard range for this offense and this defendant must present, *beyond a reasonable doubt*, a clear danger to society." 92 Wn.2d 755, 760, 600 P.2d 1264 (1979) (emphasis added). *Rhodes* took the view that in the juvenile context (based on a questionable analogy to the civil commitment context), "clear and convincing" and "beyond a reasonable doubt" actually mean the same thing. *Id.* The "legal underpinnings" of *Rhodes*'s view have "disappeared," and it should now be disavowed.[1] *W.G. Clark Constr. Co. v. Pac. Nw. Reg'l Council of Carpenters*, 180 Wn.2d 54, 66, 322 P.3d 1207 (2014).

---

[1] *State v. Baldwin*, 150 Wn.2d 448, 459, 78 P.3d 1005 (2003), overruled *Rhodes* only on the specific issue of whether "juvenile dispositional standards were subject to due process protections against arbitrary enforcement, such as vagueness challenges." *Baldwin* did not hold that a juvenile facing a manifest injustice disposition has no constitutionally protected liberty interest at stake. *Contra* majority at 12. To the contrary, in this case, T.J.S.-M.'s manifest injustice disposition included a total deprivation of physical liberty in the form of a 36-week

*Rhodes* equated "clear and convincing" with "beyond a reasonable doubt" based on *In re Levias*, 83 Wn.2d 253, 517 P.2d 588 (1973), and *State v. McCarter*, 91 Wn.2d 249, 588 P.2d 745 (1978). Those cases held that due process requires proof beyond a reasonable doubt in civil commitment proceedings and therefore assumed that when the legislature requires proof by clear, cogent, and convincing evidence for civil commitment, it actually intends to require proof beyond a reasonable doubt. *McCarter*, 91 Wn.2d at 257; *Levias*, 83 Wn.2d at 256 & n.2. Again, the analogy between juvenile disposition proceedings and civil commitment proceedings is questionable, but in any event, *Levias* and *McCarter* have been definitively overruled. *Dunner v. McLaughlin*, 100 Wn.2d 832, 843, 676 P.2d 444 (1984). Both the federal and state constitutions require only "proof by clear, cogent and convincing evidence," not proof beyond a reasonable doubt. *Id.* (citing *Addington v. Texas*, 441 U.S. 418, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979)).

*Rhodes* thus based its holding on legal foundations that no longer exist. I would disavow *Rhodes* and "assume that the legislature meant precisely what it said and apply the statute as written." *State v. Roggenkamp*, 153 Wn.2d 614, 625, 106 P.3d 196 (2005). The statutes as written require proof by clear and convincing

---

commitment to the Juvenile Rehabilitation Administration. Clerk's Papers at 83. Physical liberty is a constitutionally protected interest pursuant to the due process clause itself. *See In re Gault*, 387 U.S. 1, 41, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967). It does not need to be "created" by statute. Majority at 12.

evidence, which, as the trial court correctly noted, is "just below beyond a

reasonable doubt."[2] 2 Verbatim Report of Proceedings (Jan. 25, 2017) at 353.

I respectfully concur.

---

[2] To the extent that T.J.S.-M. contends the statutory "clear and convincing" standard is unconstitutional in light of *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), I agree that this issue was not sufficiently argued. Majority at 12 n.3.

_Yu, J._

No. 96434-3

GONZÁLEZ, J. (dissenting)—T.J.S.-M. challenges his suspended manifest

injustice disposition. During the pendency of this appeal, T.J.S.-M. violated his

special sex offender disposition alternative (SSODA) conditions. Consequently,

his SSODA and suspended disposition were revoked, rendering this case moot.

Because the majority bypasses the issue of mootness and unnecessarily analyzes *In*

*re Winship*,[1] I respectfully dissent.

"A case is moot if a court can no longer provide effective relief." *Orwick v.*

*City of Seattle*, 103 Wn.2d 249, 253, 692 P.2d 793 (1984) (citing *State v. Turner*,

98 Wn.2d 731, 733, 658 P.2d 658 (1983)). "It is a general rule that, where only

moot questions or abstract propositions are involved, . . . the appeal . . . should be

dismissed." *Sorenson v. City of Bellingham,* 80 Wn.2d 547, 558, 496 P.2d 512

(1972). A recognized exception to this general rule lies within the court's

discretion when "matters of continuing and substantial public interest are

---

[1] 397 U.S. 358, 362, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).

involved." *Id.* (citing *State ex rel. Yakima Amusement Co. v. Yakima County*, 192 Wash. 179, 73 P.2d 759 (1937), *overruled on other grounds by Schneidmiller & Faires v. Farr*, 56 Wn.2d 891, 355 P.2d 824 (1960)). Both parties concede this case is moot because T.J.S.-M. served his sentence and we cannot provide relief for him on appeal. At oral argument, T.J.S.-M.'s counsel stated that he does not see any potential consequences because this case "was just an appeal of his sentence, it wasn't an appeal of the sufficiency of evidence," and because "[T.J.S.-M.] was subsequently revoked based on a subsequent . . . adult sex offense." Wash. Supreme Court oral argument, *State v. T.J.S.-M.*, No. 96434-3 (Mar. 14, 2019), at 1 min., 15 sec. through 2 min., 17 sec., *video recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org/watch/?eventID=2019031096.

A manifest injustice sentence is analogous to an exceptional sentence and thus involves many of the same constitutional concerns as *Apprendi* and *Blakely*. *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000); *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). Both of these United States Supreme Court cases held that other than the fact of a prior conviction, any fact that increases penalty for crime beyond the prescribed statutory maximum must be submitted to jury and proved beyond reasonable doubt. *Apprendi*, 530 U.S. at 477; *see also Blakely*, 542 U.S. at 301. The majority

appropriately declines to address whether *Apprendi* and *Blakely* apply in the juvenile sentencing context because T.J.S.-M. did not present sufficient argument on the issue. Majority at 12 n.3. Had T.J.S.-M. properly presented the argument, it may well be that we would conclude *Apprendi* and *Blakely* require proof beyond a reasonable doubt in the juvenile sentencing context. But without that discussion, this case does not concern a matter of continuing and substantial public interest. Thus, we should decline to consider whether due process was offended when the trial court applied the clear and convincing standard.

The majority analyzes the clear and convincing standard in terms of *In re Winship*, 397 U.S. 358, 362, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). In *Winship*, the United States Supreme Court held the preponderance of the evidence standard was insufficient to convict a juvenile of a crime, reasoning that "'[g]uilt in a criminal case must be proved beyond a reasonable doubt'" as those rules were "'developed to safeguard men from dubious and unjust convictions, with resulting forfeitures of life, liberty and property.'" 397 U.S. at 362 (alteration in original) (quoting *Brinegar v. United States*, 338 U.S. 160, 174, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949)); *see also State v. Watkins*, 191 Wn.2d 530, 537, 423 P.3d 830 (2018) ("Juveniles charged with crimes have a right to procedural due process." (citing *In re Gault*, 387 U.S. 1, 30-31, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967))). The majority's only purpose is to arrive at the same standard of proof currently in

3

place, clear and convincing evidence. While I recognize the majority does not unsettle the standard of proof applied in this context, I fear its analysis will cause confusion because it considers some, but not all, subsequent applications of *Winship. See, e.g.*, majority at 10-11 (discussing *Winship*'s application in the civil commitment context (citing *In re Levias*, 83 Wn.2d 253, 254-255, 517 P.2d 588 (1973), *overruled by Dunner v. McLaughlin*, 100 Wn.2d 832, 676 P.2d 444 (1984))).

This is particularly true because *Apprendi* stems from *Winship*. 530 U.S. at 484 ("As we made clear in *Winship*, the 'reasonable doubt' requirement 'has [a] vital role in our criminal procedure for cogent reasons.'" (alteration in original) (quoting *Winship*, 397 U.S. at 363)). While in a future case we should address the appropriate standard of proof in the juvenile context, a discussion of *Winship* in this case will be misleading and not useful for future cases.

I respectfully dissent.

González, J.

Yoot McCloud, J.