MADSEN, J.
¶ 1 In this case, T.J.S.-M., a juvenile, challenges his suspended manifest injustice disposition. The Court of Appeals dismissed his claim on ripeness grounds. T.J.S.-M. contends his appeal is ripe for review. T.J.S.-M. also argues the trial court applied the wrong standard of proof during the sentencing hearing and, accordingly, improperly imposed a manifest injustice disposition.
¶ 2 For the following reasons, we reverse the Court of Appeals' decision but affirm T.J.S.-M.'s conviction and sentence.
FACTS
¶ 3 In February 2016, T.J.S.-M., on three separate occasions, embraced, groped, and kissed three different high school classmates. In each of these instances, the victims indicated they were not comfortable with T.J.S.-M.'s conduct and attempted to leave. T.J.S.-M. detained each girl against her will before eventually releasing her.
¶ 4 After the incidents were reported and investigated, the State charged T.J.S.-M. with two counts of indecent liberties, two counts of unlawful imprisonment with sexual motivation, and one count of fourth degree assault with sexual motivation. The case proceeded to bench trial, where T.J.S.-M. was convicted of the two counts of unlawful imprisonment with sexual motivation and one count of fourth degree assault without sexual motivation.
¶ 5 Since T.J.S.-M. had no prior criminal history, he requested the standard range of 0-30 days' confinement and 12 months' probation with conditions, including sex offender counseling, with credit for 83 days served. The State recommended a manifest injustice disposition of 36 weeks' confinement to be suspended by a special sex offender disposition alternative (SSODA).
¶ 6 The trial court adopted the State's recommendation. Applying a "clear and convincing" standard, which it understood to be "just below beyond a reasonable doubt," 2 Verbatim Report of Proceedings (Jan. 25, 2017) (VRP) at 353, the court found that T.J.S.-M. had threatened serious bodily harm and sexual motivation was an aggravating factor. It also found T.J.S.-M. had a high risk to reoffend due to the sexual nature of the offense, posed a threat to community safety, and had intellectual limitations that could also show a high risk to reoffend. As mitigating factors, the court noted that T.J.S.-M. had no prior criminal record and had some mental health issues.
¶ 7 T.J.S.-M. appealed the manifest injustice disposition. The Court of Appeals dismissed the appeal on ripeness grounds, holding that a manifest injustice disposition suspended by a SSODA is not reviewable until the SSODA has been revoked and the disposition imposed. See State v. T.J.S.-M., No. 35130-1-III, 2018 WL 4520001 (Wash. Ct. App. Sept. 20, 2018) (unpublished), https://www.courts.wa.gov/opinions/pdf/351301_unp.pdf. Between the filing of T.J.S.-M.'s notice of appeal and the Court of Appeals' ruling, T.J.S.-M. violated his SSODA conditions. His SSODA was revoked and his suspended disposition was revoked; he was *1184 committed to confinement. Decl. of Samuel J. Comi, Attach. F. T.J.S.-M. sought review in this court.
ANALYSIS
Mootness
¶ 8 As a preliminary matter, both parties agree that this case is moot since T.J.S.-M. already served his sentence and we cannot provide relief for him on appeal. Generally, we do not consider questions that are moot. State v. Hunley, 175 Wash.2d 901, 907, 287 P.3d 584 (2012) (citing State v. Gentry, 125 Wash.2d 570, 616, 888 P.2d 1105 (1995) ). A case is moot if we can no longer provide effective relief on appeal. Id. The expiration of a sentencing term technically renders a case moot. Id. (citing In re Pers. Restraint of Mattson, 166 Wash.2d 730, 736, 214 P.3d 141 (2009) ). Nevertheless, we may retain and decide a case if it involves matters of continuing and substantial interest. Id. We consider three factors when determining whether the issue presents a continuing and substantial public interest: " '[ (1) ] the public or private nature of the question presented, [ (2) ] the desirability of an authoritative determination for the future guidance of public officers, and [ (3) ] the likelihood of future recurrence of the question.' " Id. (alterations in original) (internal quotation marks omitted) (quoting Mattson, 166 Wash.2d at 736, 214 P.3d 141 ).
¶ 9 Here, the timing of appealing a suspended manifest injustice disposition is a matter of public interest. It is not unique to T.J.S.-M., and whether a suspended disposition may be challenged is irrefutably of substantial public interest. Next, the lower court relied on a prior Court of Appeals case to dismiss T.J.S.-M.'s appeal on ripeness grounds. We have not had the opportunity to decide this issue.[1] Since we have not ruled on this issue, there is a need for future guidance, meeting the second factor. Finally, this issue is likely to recur because manifest injustice dispositions are prevalent in juvenile proceedings and enhanced sentences are often challenged. Based on these considerations, we proceed to the merits of the case.
Reviewability of Suspended Manifest Injustice Dispositions
¶ 10 The first issue is whether a suspended manifest injustice disposition is reviewable prior to revocation of a SSODA. The Court of Appeals dismissed T.J.S.-M.'s appeal based on RCW 13.40.162 and State v. J.B., 102 Wash. App. 583, 9 P.3d 890 (2000). J.B. involved a challenge to a suspended manifest injustice disposition. Relying on State v. Langland, 42 Wash. App. 287, 711 P.2d 1039 (1985) (suspended life sentence as cruel and unusual punishment is not ripe for review until the sentence is actually imposed), the court in J.B. held that a suspended manifest injustice disposition is not ripe for review because "the consequences of such rulings are merely potential, not actual." J.B ., 102 Wash. App. at 585, 9 P.3d 890. The court stated that "the proper time to appeal a suspended manifest injustice disposition is after that disposition is imposed following SSODA revocation." Id. at 584, 9 P.3d 890.
¶ 11 Relying on J.B. , the State contends that the appeal should have been brought after T.J.S.-M.'s "SSODA was revoked and the [suspended] JRA [ (Juvenile Rehabilitation Administration) sentence] imposed." Suppl. Br. of Resp't at 7. The State urges that since T.J.S.-M. failed to wait until his suspended sentence was imposed, his sentence is not ripe for review.
Statutes Governing Manifest Injustice and SSODA Dispositions
¶ 12 We first note that a manifest injustice disposition and a SSODA disposition are governed by different statutes. Imposition of a manifest injustice sentence is governed by RCW 13.40.160(2). Under that section, the court must enter its reasons for imposing a manifest injustice sentence as *1185 indicated in option D of RCW 13.40.0357, and the sentence imposed under option D "shall be comprised of confinement or community supervision, or a combination thereof." RCW 13.40.160(2). "Community supervision" is defined in part as "an individualized program comprised of ... [r]esidential treatment, where substance abuse, mental health, and/or co-occurring disorders have been identified in an assessment by a qualified mental health professional." RCW 13.40.020(5)(e). If the court "imposes a sentence of confinement exceeding thirty days, the court shall sentence the juvenile to a maximum term." RCW 13.40.160(2). A court may suspend the execution of the manifest injustice disposition if imposed in conjunction with a SSODA disposition. RCW 13.40.160(10).
¶ 13 "A disposition outside the standard range is appealable under RCW 13.40.230 by the state or the respondent." RCW 13.40.160(2). If appealed, a manifest injustice disposition must be supported by the record, those reasons must clearly and convincingly support a disposition outside the standard range, and the sentence imposed must not be clearly too excessive or too lenient. RCW 13.40.230(2). RCW 13.40.230(1) provides that appeal of a manifest injustice sentence "shall be heard solely upon the record that was before the disposition court. No written briefs may be required, and the appeal shall be heard within thirty days following the date of sentencing and a decision rendered within fifteen days following the argument."
¶ 14 SSODA dispositions are governed by RCW 13.40.162(3). That statute provides that when a juvenile offender is eligible for a SSODA, a court may order an examination to determine eligibility for treatment. RCW 13.40.162(2). If the court determines treatment is necessary after reviewing the examination report, it shall impose either a standard range disposition or a manifest injustice disposition, if appropriate. RCW 13.40.162(3). The court may also "suspend the execution of the disposition and place the offender on community supervision for at least two years." Id. SSODA dispositions are not appealable under RCW 13.40.230. RCW 13.40.162(10).
¶ 15 The court in J.B. and the Court of Appeals here implicitly recognize that T.J.S.-M.'s suspended manifest injustice disposition is appealable. The disagreement is when a challenge to the manifest injustice disposition is ripe when it is imposed in conjunction with a SSODA disposition. The statutes answer this question.
¶ 16 RCW 13.40.230 does not distinguish between the appeal of a manifest injustice sentence that is suspended and one that is not. Instead, RCW 13.40.230 lays out an accelerated appellate procedure that suggests that juvenile defendants should be able to immediately challenge their manifest injustice dispositions due to the truncated timetable juvenile sentences normally face. See RCW 13.40.230(1) ("the appeal shall be heard within thirty days following the date of sentencing and a decision rendered within fifteen days following the argument" (emphasis added)). RCW 13.40.160(2) describes a manifest injustice sentence as "a disposition outside the standard range," and "[a] disposition outside the standard range is appealable." Nothing in RCW 13.40.160 suggests a manifest injustice disposition may be appealed only when a suspension is revoked. Indeed, a "disposition outside the standard range is appealable under RCW 13.40.230 by the state or the respondent." Id. (emphasis added). There is no limiting language here.
¶ 17 Reading these statutes together, it is clear that a SSODA sentence is not appealable under RCW 13.40.162(10). It is equally clear that a manifest injustice disposition is appealable under RCW 13.40.230 regardless of whether the execution of the disposition is suspended. See RCW 13.40.160(10).
¶ 18 As mentioned, the Court of Appeals here relied on J.B., which cited RCW 13.40.162 as support for holding that appeal of a manifest injustice disposition was not ripe until it is imposed. But, there is a difference between the imposition and the *1186 execution of a disposition. J.B. conflates these two distinct terms. A trial court "may suspend the execution of the disposition " when imposing a SSODA sentence. RCW 13.40.162(3) (emphasis added). However, the manifest injustice disposition is actually imposed at sentencing. Id. To the extent that J.B. suggests a manifest injustice disposition may be appealed only after the revocation of a SSODA, we disapprove it.
Standard of Proof in Juvenile Sentencing Hearings
¶ 19 When imposing T.J.S.-M.'s manifest injustice disposition, the trial court determined the standard range was insufficient by clear and convincing evidence. The trial court noted that it believed the clear and convincing evidence standard to be "just below beyond a reasonable doubt." 2 VRP at 353. T.J.S.-M. argues this was an improper standard to apply.
¶ 20 T.J.S.-M. asserts that the clear and convincing standard is the civil counterpart to beyond a reasonable doubt in the juvenile context, relying on In re Levias, 83 Wash.2d 253, 517 P.2d 588 (1973). Suppl. Br. of Appellant/Pet'r at 6. He argues that the court must find beyond a reasonable doubt that he presents a clear danger to society for a manifest injustice disposition to be upheld. Id. (citing State v. Rhodes , 92 Wash.2d 755, 600 P.2d 1264 (1979) ). He also cites to a long line of cases that also hold similar propositions.[2]
¶ 21 The State argues the line of cases that T.J.S.-M. relies on are no longer sound precedent. See Suppl. Br. of Resp't at 9-10. We agree.
¶ 22 The proposition that T.J.S.-M. argues for-that the clear and convincing standard is equivalent to beyond a reasonable doubt-has its genesis in In re Winship, 397 U.S. 358, 90 S. Ct. 1068, 25 L.Ed.2d 368 (1970). The issue in Winship was whether juveniles are constitutionally entitled to proof beyond a reasonable doubt when they are charged with criminal violations. Id. at 365, 90 S. Ct. 1068. The defendant was sentenced in New York Family Court to 18 months in training school, subject to annual extensions of commitment until his 18th birthday. Id. at 360, 90 S. Ct. 1068. The trial judge had relied on a state statute that provided " '[a]ny determination at the conclusion of [an adjudicatory] hearing that a [juvenile] did an act or acts must be based on a preponderance of the evidence.' " Id. The Supreme Court held that the preponderance standard was insufficient to convict a juvenile of a crime. It reasoned that " '[g]uilt in a criminal case must be proved beyond a reasonable doubt' " as those rules were " 'developed to safeguard men from dubious and unjust convictions, with resulting forfeitures of life, liberty and property.' " Id. at 362, 90 S. Ct. 1068 (alteration in original) (quoting Brinegar v. United States, 338 U.S. 160, 174, 69 S. Ct. 1302, 93 L.Ed. 1879 (1949) ). Due process "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." Id. at 364, 90 S. Ct. 1068. Even though juvenile proceedings generally were civil in nature and part of the purpose of those proceedings were for rehabilitative purposes, "civil labels and good intentions do not themselves obviate the need for criminal due process safeguards in juvenile courts, for '[a] proceeding where the issue is whether the child will be found to be delinquent and subjected to the loss of his liberty for years is comparable in seriousness to a felony prosecution.' " Id. at 365-66, 90 S. Ct. 1068 (internal quotation marks omitted) (quoting In re Gault, 387 U.S. 1, 36, 87 S. Ct. 1428, 18 L.Ed.2d 527 (1967) ).
¶ 23 We followed the Winship Court's rationale in Levias in the context of indefinite civil commitment proceedings. The issue there was whether the State needed to prove dangerousness for indefinite civil commitment by a preponderance of the evidence or beyond a reasonable doubt. Levias, 83 Wash.2d at 254-55, 517 P.2d 588. The trial court had instructed the jury that the standard *1187 was clear, cogent, and convincing evidence. Id. at 254, 517 P.2d 588. Relying on Winship, we noted that "due process requires proof beyond a reasonable doubt in juvenile proceedings, since the child may be 'subjected to the loss of his liberty for years.' " Id. at 255, 517 P.2d 588 (quoting Winship, 397 U.S. at 366, 90 S.Ct. 1068 ). We thus held that the clear, cogent, and convincing evidence "constitutes the civil counterpart of the criminal reasonable doubt standard." Id. at 256, 517 P.2d 588. As a result, that standard "exacts the duty that every element essential to proving committable mental illness be demonstrated to a degree essentially corresponding to that necessary for commitment in criminal proceedings." Id.
¶ 24 We reaffirmed the equivalency of the two standards in Rhodes . 92 Wash.2d 755, 600 P.2d 1264. There, we reviewed whether the imposition of a manifest injustice disposition in a juvenile sentence is supported by clear and convincing evidence in the trial court's findings. To begin, we held that "[t]he promulgation of standard disposition ranges for juvenile offenders creates a constitutionally protected ... interest." Id. at 758, 600 P.2d 1264. We then reiterated that "[t]he 'clear and convincing' standard is the civil counterpart to 'beyond a reasonable doubt' " and the "phrase 'manifest injustice' represents a demanding standard." Id. at 760, 600 P.2d 1264. "[T]o stand on review, the standard range for this offense and this defendant must present, beyond a reasonable doubt, a clear danger to society." Id.
¶ 25 That same year, the Supreme Court addressed the appropriate standard of proof in civil commitment proceedings in Addington v. Texas, 441 U.S. 418, 99 S. Ct. 1804, 60 L.Ed.2d 323 (1979). Texas determined that preponderance of the evidence was the appropriate standard for civil commitment proceedings. Id. at 422, 99 S. Ct. 1804. The Court disagreed, stating that "there is [a] possible risk that a factfinder might decide to commit an individual based solely on a few isolated instances of unusual conduct." Id. at 427, 99 S. Ct. 1804. "[D]ue process requires the state to justify confinement by proof more substantial than a mere preponderance of the evidence." Id. However, it also found the reasonable doubt standard to be equally inappropriate because unlike criminal cases, "[t]he subtleties and nuances of psychiatric diagnosis render certainties virtually beyond reach in most situations." Id. at 430, 99 S. Ct. 1804. Having such a high standard of proof would "undercut [the state's] efforts to further the legitimate interests of both the state and the patient that are served by civil commitments." Id. Thus, the court concluded the appropriate standard in civil commitment proceedings is clear and convincing evidence.
¶ 26 After that decision, we revisited Levias in Dunner v. McLaughlin, 100 Wash.2d 832, 676 P.2d 444 (1984). Relying on the Court's holding in Addington, we held that clear and convincing evidence is the standard of proof in civil commitment proceedings. Id. at 843, 676 P.2d 444. We noted that in Levias we may have felt bound by the holding in Winship to determine that proof beyond a reasonable doubt was necessary in civil commitment proceedings. Id. at 842-43, 676 P.2d 444. We then overruled Levias, holding that clear, cogent, and convincing evidence is the proper standard of proof, as a standard distinct from beyond a reasonable doubt.
¶ 27 Finally, in State v. Baldwin, 150 Wash.2d 448, 78 P.3d 1005 (2003), we overruled Rhodes 's holding that dispositional standards create a constitutionally protected liberty interest because, in part, "[t]he guidelines are intended only to structure discretionary decisions affecting sentences; they do not specify that a particular sentence must be imposed. Since nothing in these guideline statutes requires a certain outcome, the statutes create no constitutionally protectable liberty interest." Id. at 461, 78 P.3d 1005. Since the rationale for equating the clear and convincing standard with proof beyond a reasonable doubt was based on the liberty interest at stake, we recognized that our holding in Rhodes could not stand.
¶ 28 Because our case law holds that no constitutionally protectable liberty interest is created by the juvenile dispositional *1188 guidelines, due process is not offended by applying clear and convincing evidence in this context, which is not the equivalent to the beyond a reasonable doubt standard.[3]
Manifest Injustice Disposition Was Supported by Clear and Convincing Evidence
¶ 29 Finally, T.J.S.-M. contends the imposition of his manifest injustice disposition was not supported by the evidence. He argues that the trial court's findings that his conduct toward victims threatened serious bodily injury and that he was a high risk to reoffend were aggravating factors for purposes of his manifest injustice disposition do not meet the requisite standard of proof.
¶ 30 We first note that T.J.S.-M.'s argument regarding the imposition of the manifest injustice disposition is premised on his view that "clear and convincing" evidence equates to "beyond a reasonable doubt." T.J.S.-M. does not argue how he prevails if we determine that clear and convincing evidence is an intermediary standard below beyond a reasonable doubt, and he appears to concede this point.[4]
CONCLUSION
¶ 31 Manifest injustice dispositions suspended by a SSODA are reviewable when imposed-juveniles need not wait for the disposition to be executed before challenging it. We reverse the Court of Appeals' ruling to the contrary. Further, we hold that the clear and convincing standard as an intermediary standard is sufficient to support a manifest injustice disposition and affirm the trial court's ruling.
WE CONCUR:
Fairhurst, C.J.
Johnson, J.
Owens, J.
Stephens, J.
Wiggins, J.

It appears that the parties in the case that the Court of Appeals relied on, State v. J.B., 102 Wash. App. 583, 9 P.3d 890 (2000), did not seek review of that case in this court.

See id. at 7-8.

At oral argument, T.J.S.-M. raised issues regarding Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531, 159 L.Ed.2d 403 (2004), and Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L.Ed.2d 435 (2000). Because T.J.S.-M. did not present sufficient argument, we decline to address whether these cases apply to juvenile sentencing.

During oral arguments, T.J.S.-M. was asked whether he would prevail under an intermediary clear and convincing standard. While he did not expressly concede this point, he acknowledged, "It's more difficult." Wash. Supreme Court oral argument, State v. T.J.S.-M., No. 96434-3 (Mar. 14, 2019), at 15 min., 36 sec. through 16 min., 10 sec., video recording by TVW, Washington State's Public Affairs Network, https://www.tvw.org/watch/?eventID=2019031096.